MCPHEARSON *v.* STATE OF INDIANA.

[No. 768S112. Filed December 8, 1969. Rehearing denied January 28, 1970.]

*G. Stanley Hood, Stanley A. Levine,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Richard V. Bennett,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant was charged with the offense of robbery while armed and following trial by jury, he was found guilty and sentenced to ten (10) years in the Indiana State Prison. This appeal follows the overruling of appellant's motion for new trial.

The evidence most favorable to the state, pertinent to this appeal, discloses that on August 7, 1967, one Douglas Murry Hodgin was employed at the Knox Service Center located at 2702 South Clinton Street in Fort Wayne, Indiana. Hodgin was assisted by another attendant named James Biehl. Shortly after midnight on August 8, 1967, Hodgin was alone in the station when two Negro males, one of whom was identified as appellant, came into the station on foot and purchased a gallon of gasoline in a can. When the two returned, they asked if they could get their deposit on the gasoline can back.

Hodgin opened the cash register to get their money, at which time the man with appellant stated that he wanted all the money in the cash register. The evidence indicates that the man with appellant had a gun in his hand when he asked for the money. Hodgin complied with the request, after which appellant seized him by the nape of the neck and said, "Let's go to the back room." Hodgin further testified that in addition to appellant's hand on the back of his neck, he also felt a pointed object in the small of his back. Once in the back room, appellant took Hodgin's wallet and stamp book.

After taking the money from the cash register, Hodgin's billfold and the stamp book, the two men left the station. Hodgin called the police. As the two men were leaving the premises, the other attendant, Biehl, who had been road testing a car, returned in time to see the men leaving and gave chase upon being told by Hodgin that they had robbed the station. Appellant and the other man were apprehended by the police within minutes and brought back to the station where they were positively identified by Hodgin as the robbers.

Appellant asserts as error the fact that the trial court allowed the state to introduce a pistol into the evidence which was found a few feet from the spot where he was apprehended. He also contends that his constitutional right to counsel at every critical stage of the proceedings against him was violated since he was not so represented when identified by Hodgin at the service station.

We shall first discuss the alleged error relating to the admission of the pistol into evidence. Appellant contends that the admission was error and prejudicial, the pistol being immaterial and irrelevant to the charge of robbery while armed, since the affidavit charges that appellant was armed with a knife. He further contends that such evidence did not tend to throw any light on his guilt or innocence of that charge, but merely served to mislead or prejudice the minds of the jurors.

There appears to be very little authority bearing directly on the point in issue in this case. As a general proposition, Wharton in his treatise on criminal evidence states:

"Since the introduction into evidence of a physical object is governed by the rules relating to the relevancy and the materiality of evidence, it must in some manner be connected with the perpetrator or victim of the crime." 2 Wharton, *Criminal Evidence*, § 762.

Early it was held that evidence which tends to prove a matter in issue by a logical relationship between the evidence and the facts to be established is both relevant and material. *Lovell* v. *State* (1859), 12 Ind. 18. Evidence is relevant which throws or tends to throw light on the guilt or innocence of the defendant. *Wilson* v. *State* (1966), 247 Ind. 680, 221 N. E. 2d 347. *Anderson* v. *State* (1933), 205 Ind. 607, 186 N. E. 316. Evidence will not be excluded where it tends to prove material facts even though such tendency is slight. *Thomas* v. *State* (1968), 251 Ind. 76, 238 N. E. 2d 20. *Smith et al.* v. *State* (1937), 212 Ind. 605, 10 N. E. 2d 899.

Looking to the case at bar, we are not inclined to hold that the trial judge committed reversible error by admitting the pistol into evidence. There was evidence in the record ■ there had been two participants in the robbery,—appellant and the second man who had had a pistol. Although the pistol had no direct bearing on the specific charge brought against appellant to-wit, robbery while armed with a knife, it was certainly relevant evidence tending to add credence to the story of the state's principal prosecuting witness, Hodgin, that the robbery actually happened in the manner in which he testified that it did. Any evidence which substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted. Hodgin's testimony relating to the actual hold-up was crucial to the state's case and any evidence which would tend to substantiate his version of the events as they took place would definitely tend to throw light on appellant's guilt.

Hence the mere fact that the gun being offered into evidence was in no way directly tied to the particular offense charged, would not solely determine its admissability.

We next turn to the issue of whether or not appellant's right to counsel at every critical stage of the proceedings against him was violated by virtue of the fact that he was taken back to the service station immediately after apprehension to be identified without benefit of counsel.

Appellant cites three cases recently decided by the Supreme Court of the United States, *United States* v. *Wade* (1967), 388 U. S. 218, 18 L. Ed. 2d 1149; *Gilbert* v. *California* (1967), 388 U. S. 263, 18 L. Ed. 2d 1178; *Stovall* v. *Denno* (1967), 388 U. S. 293, 18 L. Ed. 2d 1199, which are principally concerned with a defendant's right to counsel at a pre-trial identification. This court, in *Lewis* v. *State* (1969), 252 Ind. 454, 250 N. E. 2d 358, discussed the application of those cases to a situation similar to the case at bar where the defendant is returned to the scene of the crime within a reasonably short time after the commission of said crime and identified by an eye witness, and indicated an unwillingness to apply the Wade-Gilbert-Stovall rationale in such a situation. Now that the question is squarely before us we will re-affirm that position.

This court is mindful of the compelling reasons which prompted the United States Supreme Court to look with exceeding caution on a pre-trial confrontation situation. It would seem that the accused has a right to counsel at any confrontation where the accused's right to a fair trial might be prejudiced:

> "It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States* v. *Wade, supra,* p. 226.

As a general proposition, we would agree with the above statement. However, as with most generalities it may easily

be stretched to meet situations which are beyond the bounds of the fact setting which prompted the statement initially. Both *Wade* and *Gilbert* involved *post indictment* line-ups which took place *several days* after arrest. Counsel had already been appointed. Certainly that is quite different than the facts here where the suspect was returned immediately to the scene of the crime. *Stovall* involved an encounter between just the suspect and the victim. Since *Wade* and *Gilbert* were not retroactive, the question there was whether petitioner had been deprived of due process. In holding that he had not been thus deprived the court stated that the totality of the circumstances must govern the making of that determination.

In light of the foregoing we therefore take the position that a criminal suspect is entitled to be represented by counsel at a pre-trial confrontation unless the facts and circumstances indicate that other interests of the suspect as well as those of society (as represented by law enforcement officials) outweigh the interest of the suspect in being represented by counsel at *that* time. One such situation that we are recognizing today is where the suspect is returned to the scene of the crime *immediately upon apprehension* and where such apprehension occurs *within a reasonably short time after the commission of the alleged offense. Commonwealth* v. *Bumpus* (Mass. 1968), 238 N. E. 2d 343. *Russell* v. *United States* (1969), 408 F. 2d 1280 (certiorari denied 89 S. Ct. 1786). The facts in the instant case obviously fall within this category. Appellant was apprehended by police within minutes after the commission of the crime and taken directly to the service station to be identified by Hodgin.

In appraising these circumstances, it would seem to this court, as we said in *Lewis,* that the best interests of the suspect as well as that of efficient law enforcement are served when the identification takes place immediately, though it be without counsel for the suspected party. At this stage of the police's investigation an obvious need is apparent for making

a speedy determination as to the suspect's identity. If the wrong man is apprehended, certainly the police must continue their search for the criminal. On the other hand, if the suspect is identified as the person who committed the alleged crime, the police might then see fit to curtail their activities as to that particular offense.

For this court to hold otherwise in situations such as that presented here would be to unreasonably encumber the state's execution of its responsibility in apprehending criminals. This court, while ever vigilant in its protection of individual constitutional rights, will nevertheless recognize the obvious practicalities of crime prevention, and where a practice does not infringe on a suspect's substantive rights, we shall not be guilty of unduly restricting the police in their efforts to protect the citizens of this state.

As to the interests of the suspect, it would seem desirable to have an early determination made as to his identity. If the suspect is shown to be someone other than the perpetrator of the crime, his release can be immediate. Further, the image of the offender is still fresh in the mind of the victim and it would seem reasonable to subject his recollection to a test of one's identity as soon as practicable,

"Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense.

Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is hard put to describe adequately in words. Though the image of an 'unforgettable

face' may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

[5] *Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.'* This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject." (our emphasis.) *Russell* v. *United States, supra,* p. 1284.

Although we are unwilling to extend the right to counsel to a situation such as presented by the case at bar, appellant could nevertheless have attacked the confrontation on the grounds that it was so riddled with those suggestive procedures found objectionable by our courts as to violate due process. We are fully aware that such suggestive procedures might remain oblivious to one not trained in the law, and presumably if the defendant is not to have counsel present, there will be no one at the scene competent to detect these techniques. However there will be several persons present who can testify as to the physical setting, conversation and other facts relating to the confrontation and it will then be within the court's province to determine whether the confrontation was conducted with propriety. Appellant made no showing here that the procedures used by the police at the scene of the confrontation were unduly suggestive, nor does the record disclose circumstances which, in their totality suggest a violation of due process.

For all the foregoing reasons, we would affirm appellant's conviction.

Judgment affirmed.

Arterburn and Givan, JJ., concur; DeBruler, C.J., concurs in result with opinion; Jackson, J., dissents with opinion.

## DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion and dissent thereto. The reasons for such dissent are as follows:

1. In my opinion the appellant was not fully advised as to his constitutional rights.

2. The admission in evidence of State's Exhibit No. 4, over objection of the defendant, constitutes reversible error, particularly so as the trial court stated "There is no evidence putting this particular gun in the hands of either the defendant or his accomplice." Therefore, the admission in evidence of the exhibit could only be for the purpose of unlawfully prejudicing the jury against the defendant.

3. The language of the court, set out at paragraph 2 above, operated to deprive the defendant-appellant of a fair trial, was prejudicial to the defendant and invaded the province of the jury in that thereby, prior to the verdict of the jury, the court indicated to the jury his belief in the guilt of the defendant, i.e., if the defendant was not guilty of any crime there could be no accomplice.

For the reasons above stated the judgment herein should be reversed and the cause remanded to the trial court with instructions to grant appellant's Motion for a New Trial.

## CONCURRING IN RESULT

DeBRULER, C.J.—I believe the trial court should have sustained the objection to the witness Hodgin's testimony concerning his pre-trial identification of appellant resulting from the presentation of appellant to the witness by the police in the absence of counsel representing appellant or an express waiver of counsel by appellant.

In *United States* v. *Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed. 2d 1149, the United States Supreme Court held that a criminal defendant has a right to the presence of counsel at every critical stage of the proceedings saying:

"in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." 388 U.S. at 226.

Under that test the police-induced confrontation of the appellant by the witness Hodgin was clearly a critical stage of the prosecution. His very freedom depended on what the witness said. As the United States Supreme Court said in *United States* v. *Wade, supra:*

"Moreover, '[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.' " 388 U.S. at 229.

It is only by *assuming* the reliability of the identification by the witness can it be said that the interests of a suspect are protected by a procedure allowing for the pre-trial identification of a suspect in the absence of counsel for the suspect.

The issue is not whose interests outweigh whose, but whether or not anything of importance to the appellant's freedom might be lost at such an identification.

There is no justification for an exception to this rule, unless it is clear that the absence of counsel could in no way derogate from the accused's right to a fair trial. That is certainly not the case here. To quote again from the *Wade* case:

"But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of

eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." 338 U.S. at 228.

Since appellant had a right to the presence of counsel at the identification, in the absence of a waiver of that right proved by the State, no testimony concerning that identification was constitutionally admissible. *United States* v. *Wade, supra.*

However, I believe the error was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed 2d 705. The State's case included the unassailed in-court identification of appellant by Hodgin as one of the men who robbed him and the in-court identification of appellant by the witness Biehl. This was strong enough to render the error in admitting testimony concerning a pre-trial identification insignificant.

NOTE.—Reported in 253 N. E. 2d 226.