SAMUEL JOHN ZION v. STATE OF INDIANA.

(No. 1176S402. Filed July 28, 1977. Rehearing denied October 13, 1977.)

Robert S. Bechert, Deputy Public Defender, of Fort Wayne, for appellant.

Theodore L. Sendak, Attorney General, Lesly A. Bowers, Deputy Attorney General, for appellee.

DeBRULER, J.—Appellant was charged by information with the offenses of rape, Ind. Code § 35-13-4-3 (Burns 1975) and commission of a felony (rape) while armed, Ind. Code § 35-12-1-1 (Burns 1975). He was convicted after trial by jury and received consecutive determinate sentences of fifteen years imprisonment and seventeen years imprisonment respectively for the rape and armed rape convictions. On appeal he raised three issues:

(1)   whether the in-court identification of appellant by the prosecuting witness and evidence of a pre-trial identification should have been suppressed because the pre-trial confrontation was conducted in an unnecessarily suggestive manner;

(2)   whether the verdicts were supported by sufficient evidence; and

(3)   whether the trial court erred in imposing consecutive sentences on the verdicts.

## I.

The victim testified at trial that she was taken to a McDonald's restaurant by a detective a day and a half after the crime, and that there she pointed out appellant as her assailant. Appellant contends that this pre-trial confrontation was arranged by the police, that the manner of staging it was both impermissibly and unnecessarily suggestive, and hence evidence of it was inadmissible. Stovall v. Denno, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Norris v. State, 265 Ind. 508, 356 N.E.2d 204; Swope v. State, (1975) 263 Ind. 148, 325 N.E.2d 193.

At the outset we address the State's argument that the issue was waived and is therefore not before us for a merit determination because no objection was made at trial to the testimony of the victim or the officer describing such confrontation and identification. Appellant made a motion to suppress evidence of the out-of-court identification which was fully heard and overruled on the first morning of trial. As the issue was fully litigated on the motion, the failure to object at trial to the same evidence was not a waiver. The contemporaneous objection rule requires a proper and timely objection to be lodged in the trial court. *Sams* v. *State*, (1969) 251 Ind. 571, 243 N.E.2d 879. This pre-trial motion satisfied the purposes of that rule. It alerted the trial court and counsel to the alleged error, allowed full litigation, and permitted immediate prevention or correction of error. *Candler* v. *State*, (1977) 266 Ind. 440, 363 N.E.2d 1233; *Horton* v. *State*, (1976) 265 Ind. 393, 354 N.E.2d 242; *Hammer* v. *State*, (1976) 265 Ind. 311, 354 N.E.2d 170. This situation is unlike that addressed recently in *Stowers* v. *State*, (1977) 266 Ind. 403, 363 N.E.2d 978. In that case no hearing was held on the pre-trial motion to suppress. Here a full hearing on the motion was held, and immediately after the hearing the trial was commenced. See *Lockridge* v. *State*, (1975) 263 Ind. 678, 338 N.E.2d 275.

Turning to the merits of the issue, we find the evidence showed that on the morning after the crime the victim described her assailant to an investigating officer as a white man, approximately 20 or 21 years old, 125 pounds, very slim build and wearing his black hair medium to short. She did not know his name, but believed she had recognized him at the time of the attack. A week before, he had approached her as she was leaving the Village Inn Tavern and had asked her to come back into the tavern to have a drink with him. She had declined the offer.

She was taken to the police station where she viewed 100 to 150 photographs of possible suspects and picked none from

among them. Appellant's photograph had not been among them. Following up on a clue supplied by a customer of the tavern, the police were led to suspect appellant. They learned his name and address, that he was employed as manager of a McDonald's Restaurant where he worked in an office in the back portion of the restaurant and that he went to work at 4:00 p.m. A day and a half after the crime, the detective phoned the victim and told her that there was a suspect that they wanted her to view and that he worked at a McDonald's Restaurant. At no time during his entire episode did the officer use words in a manner or form calculated to encourage or induce the making of a positive identification of appellant. She accompanied the detective to the restaurant where they parked outside in the lot at about 3:40 p.m. and waited in the car for the suspect to arrive. The suspect did not show up for work as expected and shortly after 4:00 p.m., the detective got out of the car, went into the restaurant and emerged in a few minutes accompanied by appellant who was then dressed in a McDonald's uniform.

The detective and appellant spoke for about two minutes while standing outside the restaurant about the fact that appellant was a suspect in a rape and burglary case and that the police would like to arrange a meeting with him at the police station. The victim remained in the car at a distance of about fifteen feet, and viewed appellant as he spoke. The conversation ended and appellant went back into the building and the detective returned to the car. When he got in, the victim was sobbing and crying and saying, "That's him, that's him." He cautioned her not to make an identification if she were not positive. At the time she also said that he was the same man she had seen at the tavern.

The detective then radioed for a uniform car. When that car appeared the detective went back into the restaurant and again asked appellant to step outside. When they got outside he placed appellant under arrest. The victim and the detective described these events at trial.

The one-on-one confrontation between suspect and victim is as a general proposition suggestive in the extreme. *Cooper* v. *State*, (1977) 265 Ind. 700, 359 N.E.2d 532; *Carmon* v. *State*, (1976) 265 Ind. 1, 349 N.E.2d 167; *Bowen* v. *State*, (1975) 263 Ind. 558, 334 N.E.2d 691; See also *Parker* v. *State*, (1976) 265 Ind. 595, 358 N.E.2d 110 (exhibition of single photograph suggestive). The practice of informing the witness that the person exhibited is suspected of the crime has frequently been condemned as unduly suggestive. *Whitt* v. *State*, (1977) 266 Ind. 211, 361 N.E.2d 913; *Carmon* v. *State*, *supra*; *Sawyer* v. *State*, (1973) 260 Ind. 597, 298 N.E.2d 440; *Hopkins* v. *State*, (1975) 163 Ind. App. 276, 323 N.E.2d 232.

The State cites *Dewey* v. *State*, (1976) 264 Ind. 403, 345 N.E.2d 842, 846, wherein the Court stated: "Nor is a one-man show-up necessarily to be condemned." We did not mean to suggest in *Dewey* that such show-ups are not suggestive, but merely that in some circumstances they are not *unnecessarily* so. In *Dewey* the show-up occurred only six hours after the crime, and the identifying witnesses had been hospitalized. The United States Supreme Court had held in *Stovall* v. *Denno, supra*, that hospitalization of the witness could be such an exigency as to render a confrontation not unnecessarily suggestive. In this case the witness was not injured or disabled. We have also held that identifications occurring when a freshly apprehended suspect is returned to the scene of a recently committed crime are not unnecessarily suggestive despite the suggestive factors unavoidably involved in such confrontations, because of the value of the witness' observing the suspect while the image of the offender is fresh in his mind. *Dillard* v. *State*, (1971) 257 Ind. 282, 274 N.E.2d 387; *McPherson* v. *State*, (1970) 253 Ind. 254, 253 N.E.2d 226; *Lewis* v. *State*, (1969) 252 Ind. 454, 250 N.E.2d 358. This confrontation, however, occurred one and one-half days after the crime, at an unrelated location.

This confrontation is unlike those considered in the *Stovall* and *McPherson* cases. At the point in time when appellant

became a known suspect and the next reasonable step in the investigatory process was to determine if the victim could identify him, appellant did not know he was suspected by the police and was not in police custody or restraint. Realistic alternatives for fairly presenting the suspect to the victim were therefore limited. Appellant suggests that the police should have invited him to stand in a line-up for identification by the victim. On the basis of the record before us, notification to the appellant that he was suspected would have endangered the victim, and could have increased the risk that the suspect would flee. Appellant next suggests that the police should have taken his photograph surreptitiously and shown it to the victim or they should have taken the victim into the restaurant and invited him to stand in a line-up there consisting of the employees of the restaurant. The plan initially chosen by the detective, namely, to have the victim attempt identification of the suspect as he entered the busy restaurant, while slightly more suggestive than these two proposed alternatives, is not substantially so. Only after execution of this initial plan met with frustration did the detective abandon it and go into the restaurant and bring the suspect out. While the level of suggestivity of the resulting confrontation is too high, the circumstances under which it was adopted demonstrate the necessity and acceptability of its use.

Inasmuch as the means adopted by the police were not impermissibly and unnecessarily suggestive, both the in-court identification and testimony of the out-of-court identification were admissible at trial.

## II.

Appellant argues that the evidence is not sufficient to support the verdicts of the jury, in that the prosecuting witness' uncorroborated testimony identifying appellant was the only direct evidence of his guilt, and that in view of the unimpeached alibi testimony of his girlfriend, this evidence was

insufficient as a matter of law. He devotes considerable attention to the inadequacy of the police investigation.

It is not the function of a reviewing court to establish standards for police investigation, except to forbid practices illegal or repugnant to the Constitution. It is also not our function to weigh the evidence or resolve questions of credibility. Appellant acknowledges the limitations on the scope of our review of the evidence, but argues that some threshold determination of credibility is necessary if our enunciated standard of sufficiency of evidence to support a conviction, ("substantial evidence of probative value") is to have any meaning. We appear to have recognized such a need in *Taylor v. State*, (1972) 257 Ind. 664, 278 N.E.2d 273, wherein this Court said:

> "If [the prosecutrix's] testimony were inherently improbable and uncorroborated, the court should direct a verdict for the defendant, as we have previously held that judgments must be sustained, within required standards of proof, with evidence sufficiently credible to be of probative value." 257 Ind. at 667, 278 N.E.2d at 275.

The testimony of the prosecuting witness identifying appellant as her attacker was not unimpeachable, but neither was it "inherently improbable."

As to appellant's alibi evidence, the jury was free to accept or reject it, and they evidently chose the latter alternative. We cannot substitute our judgment for theirs. There was sufficient evidence to support the verdict.

## III.

Appellant's final argument, that the trial court erred in imposing consecutive sentences upon appellant's conviction of rape and armed rape, is based upon the armed felony statute, Ind. Code § 35-12-1-1. We do not address this issue because the trial court committed fundamental error in entering judgments on both verdicts.

In *Hudson* v. *State*, (1976) 265 Ind. 302, 354 N.E.2d 164, 170, we said:

"Although appellant does not raise the question, this Court, on its own motion, observes that the trial court sentenced appellant on both the charge of rape and armed rape arising out of the same instance. This was error. The lesser crime of rape merged with the charge of armed rape."

The conviction for rape and sentence thereon must be vacated, and this cause is remanded to the trial court for that purpose. In all other respects the conviction is affirmed.

Prentice and Pivarnik, JJ., concur; Givan, C.J., concurs in result with opinion in which Hunter, J., concurs.

OPINION CONCURRING IN RESULT

GIVAN, C.J.—I concur with the result of the majority opinion but feel compelled to point out certain dicta in the majority opinion which I consider to be wholly erroneous. The majority opinion observes that the appellant made a motion to suppress evidence of the out of court identification of the appellant, which motion was fully heard and overruled by the trial court. The majority then states that the failure to object to the introduction of this evidence at the trial was not a waiver and not necessary in the case.

For authority the majority cites *Candler* v. *State*, (1977) 266 Ind. 440, 363 N.E.2d 1233 and *Stowers* v. *State*, (1977) 266 Ind. 403, 363 N.E.2d 978. The majority's position in this dictum is in direct opposition to a long line of authorities in this State discussed in *Harrison* v. *State*, (1972) 258 Ind. 359, 281 N.E.2d 98, wherein it is stated:

". . . if on trial a defendant does not object to evidence obtained by an illegal search warrant he cannot complain of the action of the trial court in overruling his motion to suppress." (citing authorities including 50 A.L.R.2d 531, 591)

Hunter, J., concurs.

NOTE.—Reported at 365 N.E.2d 766.