**Randy CHAMBERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1179S302.**

Supreme Court of Indiana.

July 8, 1981.

Michael E. Hunt, Monroe County Public Defender, Bloomington, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

A trial by jury resulted in appellant being found guilty of rape, robbery and confinement. This is an appeal from that conviction.

The record reveals the following facts. On December 18, 1978, the victim went to a Bloomington laundromat where she was accosted by appellant. She was struck in the head and six dollars removed from her wallet. Appellant then forced her into a yellow automobile which she entered from the driver's side. The door on the right side was damaged so that it could not be opened. This fact frustrated later attempts of the victim to escape her assailant.

Defendant drove the victim to Cascades Park where he blindfolded her, then drove to a building and took her to a room where the rape occurred. They returned to the car and drove around for about thirty minutes. The defendant stopped the car, told the defendant to get out and lie face down on the ground. He went through her wallet again and removed her military identification card. After he had driven away, the victim got up and walked to the laundromat, which was only a few blocks away. She then drove her car to the home of some friends who took her to the hospital and reported the incident to the police.

Appellant claims the trial court erred in denying his motion to suppress any testimony and the fruits thereof, relating to an oral identification by the victim. Appellant claims the circumstances surrounding the identification were so suggestive as to deny him due process of law.

The victim was unable to identify her assailant from two photographic displays which contained photographs of appellant. A few days after the incident, the victim received a telephone call from a man who identified himself as the rapist and told her that he had her military identification card. The victim notified the police who installed a device on her telephone which was capable of recording conversations and tracing the number from which the incoming calls were made. If the incoming calls were made from out of town, it would only reveal the exchange from which the call was made.

From subsequent telephone calls to the victim, from the same man, the police dis-

covered the calls originated from Elletsville, Indiana. Aware that the caller frequented a tavern after work, the police interviewed the bartender of Homer's Tavern, the only bar in Elletsville. He informed them Randy Chambers fit the physical description the victim had given to the police. The investigators went to appellant's residence where they learned that Chambers' mother, with whom he had been living at the time of the crime, owned a yellow Plymouth Scamp. Later, it was determined that on December 11, 1978, appellant's mother had taken the car to a body shop for an estimate. The car door was damaged and would not stay shut. The repairman testified she returned seven to ten days later, at which time he shut the door and locked it. Until she returned in January, the door could not be opened without a pry bar.

On January 12, 1979, believing appellant was the rapist, the detective, a police clerk and two police officers accompanied the victim to Homer's Tavern. The detective told the victim to be aware of everyone in the bar and asked whether she recognized anyone. She did not. Subsequently, appellant entered. The police told her the person they thought had abducted her was in the tavern. She walked across the room to look more closely at the defendant who had been watching her. She was still unable to identify appellant as her assailant. It should be noted, however, that appellant at the time had a beard, was wearing glasses and a ski cap which covered his hair. The victim testified these variable appearance characteristics had not been apparent on her assailant.

Since she was unable to identify appellant by his physical appearance, the detective sent her next door to the license branch with the clerk, with instructions to telephone the tavern and ask for Randy Chambers. After talking to appellant on the telephone for about five minutes, she told the clerk that the voice belonged to the man who raped and robbed her and who had made the telephone calls to her following the incident. Upon receiving this information, the police officers immediately arrested the appellant.

Appellant claims the circumstances surrounding the voice identification were so suggestive as to have deprived him of due process. The rule adopted by the United States Supreme Court in *Stovall v. Denno*, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, requires courts to look at the totality of the circumstances surrounding the identification procedure in order to determine whether "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification" so as to deny the defendant due process of law. *Stovall, supra*, at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206.

Indiana has recognized the validity of voice identifications. *Barnes v. State*, (1971) 255 Ind. 674, 266 N.E.2d 617. The question confronting us is whether, under the circumstances of this case, the identification procedure used was overly suggestive. The procedure used in the instant case was similar to that which this Court approved in *Zion v. State*, (1977) 266 Ind. 563, 365 N.E.2d 766. In *Zion*, the day after the crime the victim gave a description to the police. Police took the victim to the place of a suspect's employment. An officer brought the suspect outside the building to talk to him so that the victim could see the suspect from her vantage point in the parking lot. After the victim identified the suspect, the police arrested him.

In upholding the conviction in *Zion*, this Court stated:

"At the point in time when appellant became a known suspect and the next reasonable step in the investigatory process was to determine if the victim could identify him, appellant did not know that he was suspected by the police and was not in police custody or restraint. Realistic alternatives for fairly presenting the suspect to the victim were therefore limited. Appellant suggests that the police should have invited him to stand in a line-up for identification by the victim. On the basis of the record before us, notification to the appellant that he was suspected would have endangered the vic-

tim, and could have increased the risk that the suspect would flee.... While the level of suggestivity of the resulting confrontation is too high, the circumstances under which it was adopted demonstrate the necessity and acceptability of its use." *Zion, supra,* at 567–68, 365 N.E.2d at 769.

█ In the instant case, the victim was unable to identify appellant from police photographs. She was even unable to identify him at the tavern. However, as stated above, there was evidence that his appearance was different at the time he committed the crime.

On the other hand, her assailant had spoken freely to her during the commission of the crime. He had called her three times on the telephone after the offense was committed. The victim believed she could identify the perpetrator by his voice. Under these circumstances, the trial court was justified in finding that the procedure utilized by the police was reasonable and not unduly suggestive.

█ Appellant also asserts the substance of the telephone conversation between the victim and appellant which transpired when the victim called appellant at Homer's Tavern should have been suppressed since the oral identification itself was impermissible. We hold the trial court did not err in finding that the identification procedure was not unreasonably suggestive. We further hold the trial court did not err in finding this challenged testimony was not subject to suppression on the grounds asserted.

█ Appellant next argues the trial court erred in denying his motion to suppress all evidence seized from his wallet by the police during a search at the police station. It was not until the appellant arrived at the police station following his arrest that the police asked him to surrender the contents of his pockets. The detectives looked through appellant's wallet in search of the victim's military identification card. Instead of the card, the detective discovered a small piece of paper with the victim's name, telephone number and address scrawled across it. This search, appellant claims, violated Article 1, § 1 of the Indiana Constitution and the Fourteenth Amendment of the United States Constitution.

The State concedes it did not have a warrant to search appellant's wallet. However, the State contends the search was instant to a lawful arrest and therefore valid. This Court stated in *Farrie v. State,* (1971) 255 Ind. 681, 683, 266 N.E.2d 212, 214, "[a] search incident to a valid arrest is lawful regardless of what it reveals." Appellant cites *Bradford v. State,* (1980) Ind. App., 401 N.E.2d 77, and *Johnson v. State,* (1980) Ind.App., 413 N.E.2d 335. Both of these cases involve women's handbags which were searched following the arrest of the woman. We hold, however, that the handbag cases are distinguishable from a wallet found in a man's pocket as in the case at bar. For reasons discussed below, we hold the trial court did not err in finding the search of Randy Chambers' wallet was proper.

*Bradford* and *Johnson* more nearly parallel the case of *United States v. Chadwick,* (1977) 433 U.S. 1, 97 S.Ct. 2476, 2477, 53 L.Ed.2d 538 also cited by the appellant. In *Chadwick,* a footlocker was seized when the defendant was arrested. One and one-half hours after the arrest the police opened the footlocker without either a warrant or the permission of the defendant. They discovered the trunk contained a significant amount of marijuana. The Court reversed the conviction holding the warrantless search was not incidental to the arrest nor justified by any other exigent circumstances.

In an analysis of *Chadwick,* the Sixth Circuit explained: "*Chadwick* establishes a limit on the validity of warrantless searches of the property of an arrested person. The court there explained that an individual has a legitimate expectation of privacy in the contents of a container such as a footlocker, which differs from the expectation of privacy associated solely with the person." *United States v. Calandrella,* (6th Cir. 1979) 605 F.2d 236, 248.

The Court in *Chadwick* stated:

"[o]nce law enforcement officers have reduced luggage or other personal property not *immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *Chadwick, supra,* 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed. at 551. (emphasis added)

The Seventh Circuit has interpreted the above phrase to allow warrantless searches of an item, such as a wallet, which is found on the person of the arrestee:

"The Court appears to be distinguishing—for the purposes of whether a warrant is required to search property in police custody that was seized from a suspect at the time of arrest—between searches of an arrestee's clothing, as in *Edwards* [*United States v. Edwards,* (1974) 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771], or items that were in his pockets, as in *Robinson* [*United States v. Robinson,* (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427], from searches of other possessions, such as luggage, that were within his immediate control. Warrantless searches of the former items after they come in police custody can be characterized as searches of the arrestee's person because they do not involve any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself." *United States v. Berry,* (7th Cir. 1977) 560 F.2d 861, 864 *vacated on other grounds,* 571 F.2d 2, *cert. denied,* 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978).

It thus appears *Chadwick* does not protect from warrantless searches items which are found on the person of an arrestee or items immediately associated with his person. The search of appellant's wallet in the instant case was proper since it was searched as a part of a search of his person.

Appellant also argues, however, that the search was not instant to the arrest since he was arrested at the tavern but not ordered to surrender the contents of his pockets until he had been transported to the police station.

In *United States v. Phillips,* (8th Cir. 1979) 607 F.2d 808, Phillips sought to suppress a note which had been removed from his wallet. The note implicated him in a robbery scheme. First, the police arrested Phillips. Next, he placed the contents of his pockets on a table. Third, this property was placed in an envelope and delivered to another agent who, "outside the presence of the defendant, searched Phillips's wallet and removed the note." *Phillips, supra,* at 809. The Eighth Circuit Court of Appeals upheld the search and seizure stating that the United States Supreme Court has held, "a search of [an] arrestee's person incident to a lawful arrest does not violate the fourth amendment even if a substantial period of time has elapsed between the arrest and the subsequent taking of property." *United States v. Phillips, supra,* at 810, citing *United States v. Edwards,* (1974) 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771, 778.

In *United States v. Ziller,* (9th Cir. 1980) 623 F.2d 562, the defendant was convicted of importation of cocaine and conspiracy to import cocaine. The defendant was arrested outside the San Francisco Airport. He was taken to the federal building where he was searched. During the search, the agents confiscated his wallet, opened it, and discovered a slip of paper containing incriminating evidence. Ziller challenged the warrantless search of his wallet. The Ninth Circuit, viewing the search as a search of the person, held that the search of the contents of the wallet was permissible as an incident to and a part of a personal search. *Ziller, supra,* at 563.

The trial court was justified in finding the search of Chambers' wallet was proper under the circumstances. The search was incident to the arrest since the wallet, unlike a piece of luggage, was immediately associated with the person of appellant. The fact that the wallet was not searched until the defendant arrived at the police station does not alter the fact that the search was incident to the arrest.

▉ Appellant next claims the trial court erred in permitting the State to play a tape recording of a phone conversation between the victim and her assailant more than one time over the objection of the defendant. The tape was played four times. Appellant contends the trial court abused its discretion in allowing the repeated playing of the tape.

The judge stated he permitted the tape to be replayed because

"the tape was low in volume, the window was open, and I saw several members on either end of the jury straining forward attempting to hear it, and shaking their heads as though they could not, and I think that it's only fair that all the jury hear the tape, so I will allow it to be replayed." (Tr. 376)

At most, the repeated playing of the tape was cumulative evidence. "The admission or exclusion of cumulative evidence . . . is within the sound discretion of the trial court." *Pierce v. State*, (1970) 253 Ind. 650, 654, 256 N.E.2d 557, 559. We hold the trial court did not err in allowing the tape to be replayed so all of the jurors could hear it.

▉ Appellant claims the trial court erred in denying his motion for a mistrial when it developed that two of the jurors had heard out of court remarks made by the defendant during a recess. Where a juror informs the court he has received extraneous information, the trial court must question the jury "to determine its exposure, and . . . jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom." *Lindsey v. State*, (1973) 260 Ind. 351, 358, 295 N.E.2d 819, 823. The judge followed this procedure and determined the affected jurors could remain impartial and the matter would not affect their ability to impartially deliberate upon a verdict.

▉ Whether or not a mistrial should be granted is largely within the discretion of the trial court and will merit reversal only upon a showing of abuse of such discretion. *Choctaw v. State*, (1979) Ind., 387 N.E.2d 1305; *Duke v. State*, (1968) 249 Ind. 466, 233 N.E.2d 159.

▉ The trial court properly denied appellant's motion for a mistrial. The appellant has failed to show any abuse of discretion.

▉ Appellant next claims the trial court erred in overruling his motion for a judgment on the evidence with respect to the rape charge as there was no proof of venue as to that charge. Since the victim had been blindfolded going to and from the situs of the rape, appellant asserts it could have taken place outside Monroe County. Appellant has waived this alleged error as he proceeded to put on evidence of his defense to this charge. *Murphy v. State*, (1976) 265 Ind. 116, 352 N.E.2d 479; *Parker v. State*, (1976) 265 Ind. 595, 358 N.E.2d 110.

▉ Appellant asserts the trial court erred in giving its preliminary instruction number ten which instructed the jurors they could take notes, but admonished them not to become too involved in their note taking. In *Dudley v. State*, (1970) 255 Ind. 176, 263 N.E.2d 161, this Court stated that whether or not the court permits jurors to take some notes to support their memory is within the discretion of the court and abuse of such discretion must be shown to constitute error. *Dudley v. State, supra*, at 182, 263 N.E.2d at 164.

Appellant urges us to overturn this rule of law and return to the former rule which prohibited any note taking by jurors. *Cheek v. State*, (1871) 35 Ind. 492; *Batterson v. State*, (1878) 63 Ind. 531. We decline to overrule the modern majority view. *Miresso v. State*, (1975) 163 Ind.App. 231, 323 N.E.2d 249. Further, there was no showing of prejudice to defendant in the instant case with respect to juror note taking.

▉ Appellant next claims the trial court erred in refusing to give his proposed final instructions numbers three, five, six, seven, eight and ten. "A trial court refusal to grant tendered instructions will be reversed only if, considering the evidence in the case, the substance of the instruction

was required to be given and was not adequately covered by other instructions actually given by the trial court." *Dillard v. State*, (1971) 257 Ind. 282, 288, 274 N.E.2d 387, 390.

Appellant's proposed instruction number three informed the jury of its responsibilities during deliberations. The substance of this instruction was adequately covered by the Court's final instruction number thirty-one.

Appellant's tendered instruction number five instructed the jury, in very broad terms, that the jury might find the defendant not guilty of the degree of the crime charged in the indictment or information, but guilty of a lesser included crime. Final instructions eleven and fifteen fully covered the various lesser included offenses which the evidence could support.

Instruction number six, which appellant proposed, would have instructed the jury the State must prove beyond a reasonable doubt the defendant was the perpetrator of the crime charged in order for them to find him guilty. Final instruction number twenty, which covered the defendant's presumption of innocence and the obligation of the State to prove a defendant guilty beyond a reasonable doubt of every essential element, in conjunction with instruction number twenty-five which informed the jury on the nature of identification testimony, adequately covered the substance of appellant's tendered instruction number six.

Defendant's tendered final instructions numbers seven, eight and ten each dealt with circumstances surrounding identification testimony and the weight and sufficiency of identification testimony. Again, the Court's final instruction number twenty-five adequately instructed the jury on this issue.

██ Appellant's final assertion is the verdict of the jury is not supported by sufficient evidence and is, therefore, contrary to law. When sufficiency of the evidence is challenged on appeal, this Court will consider only that evidence most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. *McCollum v. State*, (1980) Ind., 413 N.E.2d 912; *Lynn v. State*, (1979) Ind., 392 N.E.2d 449.

Appellant reasserts his first argument that the identification of the defendant as the perpetrator of the crime was not established by sufficient evidence because the evidence was illegally obtained. Since the trial court correctly ruled such evidence was properly obtained, this argument must fail.

██ Appellant also argues there was no evidence to prove the rape occurred in Monroe County, Indiana. The applicable statute, IC 35–1.1–2–1 [Burns, 1976], provides in pertinent part

"(a) Criminal action shall be tried publicly in the county where the offense was committed, except as otherwise provided by law.

\*    \*    \*    \*    \*    \*

"(d) If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties."

There is sufficient evidence in the record to support the allegation the robbery and confinement occurred within Monroe County. Since the rape was integrally related to the robbery and confinement, there was an adequate jurisdictional basis for appellant's conviction on all three charges in the Monroe Superior Court. *French v. State*, (1977) 266 Ind. 276, 362 N.E.2d 834; *Pollard v. State*, (1979) Ind., 388 N.E.2d 496; *Conrad v. State*, (1974) 262 Ind. 446, 317 N.E.2d 789.

The trial court is in all things affirmed.

All Justices concur.