John T. GLOVER, Appellant,

v.

STATE of Indiana, Appellee.

No. 1081S278.

Supreme Court of Indiana.

Nov. 30, 1982.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, John T. Glover, was convicted of criminal confinement, a class B felony, Ind.Code § 35–42–3–3 (Burns 1979 Repl.), and received a sentence of ten years on that conviction. After being found an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.), an additional thirty-year term was added to his sentence. In this direct appeal he raises these issues:

1. Whether the jury's verdict, finding defendant guilty of confinement with a deadly weapon, was contrary to the law and the evidence because there was no proof that defendant was armed with a deadly weapon.

2. Whether the trial court erroneously admitted the testimony of two of the State's witnesses after they failed to appear for scheduled depositions.

3. Whether the trial court committed reversible error by admitting certain identification testimony.

4. Whether the trial court erred in not granting defendant's request for a lineup.

The facts most favorable to the verdict show that at around 8:00 p.m. on August 13, 1980, Sharon Bunton and Denise Webster were walking from their apartment

complex in Indianapolis to a nearby shopping center. Defendant pulled alongside them in a shiny brown van and asked for directions. He then got out of the vehicle and stuck a gun in Bunton's side. He ordered Webster to walk straight ahead and not look back or he would shoot her. He placed Bunton in the back of his van in a gold living room chair and blindfolded her. After driving for several minutes, he told Bunton that he wanted to have sex with her and asked her if she was menstruating. When she replied affirmatively, he threatened to shoot her if she were lying. He then stopped the van, checked to make sure she was telling the truth, removed the blindfold and released her.

Defendant was stopped in the van several minutes later by police for questioning. A Crossman .177 caliber pellet gun was found under the front seat. Defendant was released when Denise Webster was brought to the scene and, after initially identifying defendant as the man who abducted Bunton, recanted that identification. At approximately 10:00 p.m., defendant was stopped again on the other side of town. Bunton positively identified him there as the man who had abducted her, and Webster concurred in that identification. Defendant was placed under arrest.

### I.

Defendant first contends that the verdict of the jury is contrary to the law and the evidence. Criminal confinement is prohibited by Ind.Code § 35–42–3–3 (Burns 1979 Repl.) which defines the offense generally as a class D felony but states:

> "However, the offense is a ... class B felony if it is committed while armed with a deadly weapon."

Defendant argues that there was no proof adduced at trial that he was "armed with a deadly weapon."

A Crossman .177 caliber pellet pistol was found under the seat of appellant's van. It was described as being similar in size to a .45 caliber automatic, but with a longer barrel, and of blue steel. In ordinary operation it is held in the hand and when fired expels a .177 caliber metal projectile by compressed gas. By statutory definition, a deadly weapon includes a weapon which in ordinary use is readily capable of causing serious bodily injury which includes "serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protacted loss or impairment of a bodily member or organ." Ind.Code § 35–41–1–2 (Burns 1979 Repl.) The jury would be warranted in inferring from the description of the pistol that it is inherently a weapon, and that it could successfully be used in hunting rodents and small game. The jury would be warranted further in inferring that an air pistol of this type, when discharged at a human being at close range, could result in extreme pain, and even the loss and impairment of hearing or sight. While appellant testified that this pistol was a toy belonging to his grandchild, the jury was not required to believe this. It could have considered the fact that appellant had this pistol under the seat of his van as an additional small bit of evidence serving to bolster the inference that it is considered useful as a weapon.

Where different conclusions can be reached as to whether or not the weapon is deadly, it is a question of fact for the jury to determine from a description of the weapon, the manner of its use and the circumstances of the case. *McFarland v. State,* (1979) Ind.App., 384 N.E.2d 1104. Here, the verdict of the jury was not contrary to the law or the evidence.

### II.

Defendant next urges that the trial court committed reversible error by admitting, over objection, the testimony of Sharon Bunton and Denise Webster. He claims that their testimony should have been excluded because they failed to appear for several scheduled depositions. Indiana Rules of Trial Procedure 30 and 31 provide for the taking of depositions of witnesses upon oral examination. Both provide that the "attendance of witnesses may be compelled by the use of subpoena as provided in Rule 45."

Three notices of the taking of depositions were filed with the State by defendant and it appears that a subpoena may have been issued on the second notice. Indiana Rule of Trial Procedure 45(D) provides for the issuance of subpoenas for the taking of depositions, and Indiana Rule of Trial Procedure 45(F) indicates that "[f]ailure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of court." Defendant thus had the opportunity to compel these witnesses to attend the depositions, but did not take full advantage of the methods available to him. Sanctions for failure to comply with a discovery request are discretionary, not mandatory. *Lund v. State,* (1976) 264 Ind. 428, 345 N.E.2d 826; Ind.R.Tr.P. 37. Since he failed to avail himself of the processes at his disposal, defendant cannot now complain that the witnesses' failure to attend the depositions is sufficient grounds for exclusion of their testimony. The trial judge acted within his discretion in allowing this testimony. Furthermore the record reveals that Bunton did in fact appear at a scheduled deposition and was deposed.

### III.

■ Defendant next assigns as error the admission of the testimony of Bunton and Webster concerning their pre-trial identification of defendant and their in-court identification of him. He contends that the identification procedures employed by the law enforcement officers here were impermissibly suggestive, resulting in irreparable misidentification. Defendant was positively identified by the victim of the crime less than two hours after its commission in a one-on-one "show-up" confrontation conducted on the street where defendant had been stopped.

We have held, as has the United States Supreme Court, that identification procedures which are so suggestive as to give rise to a substantial likelihood of misidentification violate a defendant's due process rights. *Simmons v. United States,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Sawyer v. State,* (1973) 260 Ind. 597, 298

N.E.2d 440. It is, however, permissible for a law enforcement officer to present a suspect for identification within a few hours of the commission of the crime. *Coffee v. State,* (1981) Ind., 426 N.E.2d 1318.

Identifications similar to the one at issue here of a freshly apprehended suspect have been held to be not unnecessarily suggestive despite the suggestive factors unavoidably involved in such confrontations, because of the value of the witness's observation of the suspect while the image of the offender is fresh in his mind. *Zion v. State,* (1977) 266 Ind. 563, 365 N.E.2d 766, *reh. denied* (1977); *McPhearson v. State,* (1970) 253 Ind. 254, 253 N.E.2d 226, *reh. denied* (1970); *Lewis v. State,* (1969) 252 Ind. 454, 250 N.E.2d 358, *reh. denied* (1969). In the instant case, the pretrial identifications were not unnecessarily suggestive, and thus testimony about them was correctly admitted and the in-court identifications of the defendant were proper.

### IV.

■ Denial of his pre-trial motion for a lineup is defendant's final assignment of error. Defendant filed a "Motion for Lineup and Request for Guidelines Concerning Same" which was denied. He later filed a "Renewed Motion for Lineup and Memorandum in Support of Same" which was also denied. Before trial, a judge pro tem ordered the State to make arrangements for the defendant to appear in a lineup but this was later cancelled after the State's "Motion for Reconsideration of Court's Ruling" was filed and a hearing was held on that motion. The State's motion was based on the fact that on the evening prior to the scheduled lineup, the defendant had shaved off all of his facial hair and all of the hair on his head in an apparent attempt to disguise his appearance.

While no authority exists in Indiana for the granting of a pre-trial lineup upon a defendant's request, *Kusley v. State,* (1982) Ind., 432 N.E.2d 1337, discovery in criminal cases is largely a matter within the discretion of the trial court. *Ross v. State,* (1980) Ind., 413 N.E.2d 252; *Gutierrez v. State,*

(1979) Ind., 395 N.E.2d 218. Ordinarily, discovery will be afforded the defendant if he sufficiently designates the item he seeks and demonstrates its materiality, unless the State shows a paramount interest in nondisclosure. *Williams v. State,* (1981) Ind., 417 N.E.2d 328. Here, the State demonstrated such an interest because of defendant's apparent attempt to disguise his identity. There was no abuse of discretion by the trial judge and no error on this issue.

The conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.