Charles HICKS, Appellant,

v.

STATE of Indiana, Appellee.

No. 184S37.

Supreme Court of Indiana.

April 30, 1986.

Robert R. Garrett, Public Defender's Office, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of burglary, a class A felony, I.C. § 35–43–2–1, and robbery, a class A felony, I.C. § 35–42–5–1. A jury tried the case. Appellant received concurrent thirty-five year sentences.

Appellant raises one issue on appeal: whether his in-court identification was the

result of an impermissibly suggestive pretrial identification procedure.

These are the facts from the record that tend to support the determination of guilt. On December 18, 1982, Carletta Baskin was sleeping with her daughter when an intruder awakened her. He was holding an 18 inch long butcher knife. After about fifteen minutes, the intruder grabbed Carletta Baskin around the throat, and he forced her to go into the master bedroom. Then the intruder awakened Marlon Baskin, Carletta's husband, and he told him to get into the closet or he would kill his wife. The intruder permitted him to turn on the closet light, during which time Marlon Baskin was only two feet away from the intruder. Subsequently, the intruder told her to take off her clothes or he would kill her children. She complied, and then she seductively approached him and placed her arm around his waist. Thereafter, she grabbed the knife and she yelled for her husband. He bolted out of the closet with a bar bell in his hands, and he started fighting with the intruder. During the fight, she jumped on the intruder's back and his stocking cap came up to his eyebrows. Then she broke a ceramic pitcher and basin over the intruder's head. The men tumbled down the stairs, and the fight continued in the living room. She obtained a gun, and she told her husband to move out of the way. The intruder started running to the front door, and, when he was approximately six feet away, she shot him. The intruder limped as he fled the residence. The Baskins called the police. They gave a description of the intruder. She described him as six feet four, two hundred and forty pounds, black and male with dark pants, white gym shoes with dark laces, a navy blue peacoat, a stocking cap, a skull cap, and thick black gloves.

She was then taken to Mercy hospital for treatment on her left hand. When she entered the emergency room, a Gary Police Officer told her there was a person who might fit the description they had given at their residence. She looked into a cubicle, and she identified appellant as the intruder. She also identified appellant's dark colored pants and his gym shoes. Shortly thereafter, Mr. Baskins arrived at the hospital. He also looked into the cubicle, and he identified appellant as the intruder. He also recognized appellant's pants and shoes. The Baskins did not talk to each other until each had identified appellant as the intruder. Moreover, they were not aware that appellant was suffering from a gunshot wound.

I

■ Appellant argues that his in-court identification was the result of an impermissibly suggestive pre-trial identification procedure. Appellant moved to suppress the identification evidence; the trial court held a hearing, and it denied the motion. At trial, he objected on the basis of his motion to suppress to Carletta Baskin's in-court identification of him and to her testimony concerning her out-of-court identification of him. Appellant did not object to the identification testimony of Marlon Baskin, consequently appellate review of his identifications of appellant is foreclosed.

> Evidence on positive pre-trial identifications of the accused by witnesses to a crime is inadmissible as inconsistent with the requirements of due process of law if it is the product of police procedures which are unduly and unnecessarily suggestive of guilt and create a substantial likelihood of irreparable misdentification. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, *Parker v. State* (1981), Ind., 415 N.E.2d 709. Furthermore, direct evidence at trial by witnesses subjected to such condemned procedures is also inadmissible unless a basis, independent of such procedures as gleaned from a totality of the circumstances, supports it. *Foster v. California*, (1969), 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193.

*Ingram v. State* (1981), Ind., 421 N.E.2d 1103.

In *Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766, the detective took the victim to a McDonald's restaurant a day and a half after the offense. The initial plan was to wait outside in order to view defendant as he went to work. When he did not enter the restaurant, the victim waited in the car, and the detective went into the restaurant. He emerged a few minutes later, accompanied by the defendant who was wearing a McDonald's uniform. The detective informed the defendant that he was a suspect in a rape and burglary case and that the police would like to arrange a meeting with him at the police station. The victim remained in the car at a distance of about 15 feet, and she viewed the defendant as he spoke. After about two minutes, the conversation ended; the defendant went back inside the restaurant, and the detective returned to the car. When he got in the car, the victim was sobbing and crying and saying, "That's him that's him." *See Zion, supra,* 365 N.E.2d at 768.

The Court held, "While the level of suggestivity of the resulting confrontation is too high, the circumstances under which it was adopted demonstrate the necessity and acceptability of its use." *Zion, supra* at 769. The Court implicitly indicated its approval of the initial plan due to the following factors: (1) that defendant was not in police custody at the time of the planned one-on-one confrontation which consequently limited realistic alternatives for fairly presenting the suspect to the victim; (2) that notification to the defendant that he was a suspect would have endangered the victim; (3) that such notification would have increased the risk of flight by the defendant. The Court allowed the resulting identification evidence from the actual one-on-one confrontation because of the exigent circumstances the police faced after the failure of their initial plan and because the elapsed time between the commission of the offense and the one-on-one confrontation was not of such a magnitude as to lead to a substantial likelihood of misidentification.

■ The one-on-one confrontation in the instant case is similar to the initial plan in *Zion.* When the victim identified him in the hospital, appellant was not in police custody, and he did not know he was a suspect. Here, the level of police involvement was substantially less than in *Zion.* The victim went to the hospital for the purpose of treatment. It was only fortuitously that the appellant happened to be there. The police then informed her that there was someone in the emergency room who fit the description of the perpetrator of the offenses, and they asked her if she would look at him. The victim identified him thirty minutes after the offenses. Moreover, the victim was able to observe appellant's physical features including the outline of appellant's face for at least twenty minutes during the offenses. Furthermore, she was able to observe appellant's clothes and shoes during the offenses, and she identified them at the hospital. Under these circumstances, the means adopted by police were not so unnecessarily suggestive as to give rise to a substantial likelihood of misidentification. The trial court did not er in allowing evidence of the in-court identification and the out-of-court identification.

## II

After completion of the briefing, appellant filed a pro se petition alleging that his appellant counsel had denied him his constitutional and statutory right to appeal by waiving specifications 1, 3 and 4 in his motion to correct errors. No brief bearing on these specifications has been tendered. Appellant states that he does not want those issues waived. The issues are set forth here:

1. Whether the trial court erred in denying his pro se motion for a continuance in order to retain private counsel;

3. Whether the trial court erred in admitting, over his objection, a peacoat due to an insufficient foundation;

4. Whether there was sufficient evidence to support his conviction.

Appellate counsel determined that these issues were without sufficient merit to warrant consideration by this Court.

We have examined the disputed issues in sufficient depth to permit us to determine whether appellate counsel's action was rationally based and whether rebriefing would serve a useful legal purpose. *Music v. State* (1986), Ind. 489 N.E.2d 949.

In consideration of the first issue we find no pro se motion for continuance in the record, and therefore it is not properly preserved. Even though the admission of the peacoat is arguably error, success on that issue would not warrant reversal because of the overwhelming evidence of guilt. Issue 4, sufficiency of the evidence, was an integral part of the identification issue properly argued by appellate counsel and considered on its merits above in this opinion. We therefore conclude that appellate counsel's action was rationally based and that rebriefing would serve no useful legal purpose.

The convictions are affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ. concur.