Edward HALLER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 4–781A48.

Court of Appeals of Indiana, Fourth District.

Sept. 20, 1983.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

After a bench trial, appellant Edward Haller was convicted of possession of cocaine,[1] a class D felony, and possession of LSD with intent to deliver it,[2] a class B felony. The sole issue raised by Haller on appeal is whether the trial court erred in failing to suppress evidence obtained pursuant to Haller's warrantless arrest and subsequent search. He claims his Fourth Amendment rights were thereby violated.[3]

For the reasons stated below, we affirm.

## FACTS

From February 27 to March 4, 1980, Sergeants Bolin and Coate of the Indiana State Police spoke several times with an informant who told them a person from California would soon be in Indianapolis for the purpose of selling LSD to a "Roy Burger" of Jasper, Indiana. Prior to February 27, the informant had provided Coate reliable information regarding six other persons involved in drug traffic in and out of Indiana, which led to the arrest of at least two of said persons. This informant expected to be supplied by this particular shipment of drugs. Coate last spoke with his informant in the very early hours of March 5. The informant told him he had talked to "Roy Burger" who had gone to Michigan on March 4 to see another dealer where he stayed an hour and then apparently spent the night in Illinois. No information regarding "Burger's" description was given. On March 4, Officer Badics of the South Bend Police Department spoke with another informant who advised him that a Jerry Mowrer from Westminster, California, was staying at a "plush" hotel in Indianapolis under his own name and that he would have a large quantity of drugs with him. The informant also told Badics that Mowrer was in Indianapolis for the purpose of selling LSD to an individual named "Burger." In the past this informant had provided Badics with reliable information which had led to a variety of arrests. Badics relayed his information to Bolin.

Acting on these tips, the police discovered that a Jerry Mowrer from West-

1. Ind.Code 35–48–4–6, amended 1983 Ind.Acts, P.L. 138 § 3.

2. Ind.Code 35–48–4–2(2).

3. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

minster, California, was staying in room # 1922 at the Hyatt Regency Hotel in Indianapolis, and that his reservations for March 3 and 4 had been extended to March 5. As a result they set up surveillance in a room across the hall from Mowrer's room at 3:00 A.M. on March 5. At approximately 1:25 P.M. the police observed a person, identified after the arrests as Mowrer, leave room # 1922, enter the elevator, and quickly return to the room with two persons later identified as appellant Haller and a Martin Beck, both from Jasper, Indiana.[4] At approximately 2:20 P.M., the occupants of room # 1922 began to open the door, and when it opened three to four inches, the police pushed the door open and entered the room. The police arrested[5] the occupants of the room for conspiracy to commit dealing a controlled substance and searched them. The officers did not have a warrant for the arrest of any of the room's occupants nor did they have a warrant to search the room at the time of entry. A weapons search of Haller revealed he possessed a clear plastic bag containing several thousand tablets. The officer then had Haller empty his pockets and found a small quantity of white powder wrapped in a piece of off-white paper. Subsequent chemical analysis showed the tablets were LSD and the powder, cocaine (1.5 grams).

The facts recited above pertaining to probable cause for Haller's warrantless arrest—the information provided by the informants, *their reliability,* and corroboration by the police officers—were supplied at a suppression hearing conducted prior to trial, the transcript of which was made a part of the trial record. At that hearing, the court declined to suppress the contraband seized from Haller's possession. Again at trial, after Haller renewed his motion, it was denied.

4. Access to the 19th floor of the Hyatt is limited to those with an elevator key for that floor.

5. There was some conflict in the testimony regarding the sequence of events in Mowrer's room as to whether the officers arrested them before or after the search. Our standard of review requires us to consider only the evidence most favorable to the judgment. Re-

## DECISION

This court recently reversed the trial court conviction in Jerry Mowrer's companion case. *Mowrer v. State,* (1983) Ind.App., 447 N.E.2d 1129, *trans. denied.* However, the disposition of Haller's case is necessarily different for evidentiary reasons. First of all, Mowrer successfully contested his warrantless arrest by applying the reasoning in *Payton v. New York,* (1980) 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, and arguing that he was entitled to the same expectation of privacy in his hotel room as he would possess in his home. Thus, all evidence gathered incidentally to such warrantless arrest was inadmissible. Haller, on the other hand, did not assert any privacy interest in the hotel room nor did he have standing to do so. Also, in *Mowrer,* we found that a later search of Mowrer's room pursuant to a search warrant obtained after Mowrer's arrest was improper because the warrant's supporting affidavit failed to establish the reliability of the informants. In the instant case, we need not address the defective search warrant because the evidence against Haller was seized from his person, without a warrant and pursuant to his arrest. Rather, the probable cause for Haller's arrest was supported by testimony at the suppression hearing, which we believe established the reliability of the informants. Therefore, the distinctions between the two cases are twofold: (1) Mowrer's warrantless arrest and the later search warrant were both defective so (2) there was no admissible evidence; (1) Haller's warrantless arrest was valid, and (2) thus, the evidence seized as a result was admissible. We are therefore compelled to affirm Haller's conviction.

*Probable Cause*

Haller contends his warrantless arrest and search were fatally defective because they lacked probable cause. We disagree.

gardless, a limited search of a person is permissible before an arrest in order to preserve destructible evidence (in this case, drugs) if the police already had probable cause. *Cupp v. Murphy,* (1973) 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900; *Mann v. State,* (1973) 155 Ind. App. 261, 292 N.E.2d 635. In this case, there was such probable cause.

In Indiana, a police officer is empowered to arrest a person without a warrant if there is probable cause to believe such person has committed a felony. *Garr v. State,* (1974) 262 Ind. 134, 312 N.E.2d 70. Probable cause is established when the facts and circumstances within the knowledge of the officer at the time of the arrest would warrant a person of reasonable caution to believe the arrestee has committed or is committing a felony. *Fyock v. State,* (1982) Ind., 436 N.E.2d 1089; *Funk v. State,* (1981) Ind., 427 N.E.2d 1081. Certainly it cannot be denied that probable cause can be established by information relayed to police officers by informants. *Illinois v. Gates,* (1983) —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527; *see also Rihl v. State,* (1980) Ind.App., 413 N.E.2d 1046 (probable cause for warrantless search and seizure is same as that required for warrants when relying on informants).

*Illinois v. Gates,* however, recently redefined the *ex post facto* scrutiny of the probable cause determination and abandoned the strict application of the two-pronged inquiry borne of *Spinelli v. United States,* (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 and *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. The thrust of the *Aguilar-Spinelli* inquiry was that intelligence communicated by an informant must be founded upon sufficient information to conclude that in fact an offense is being committed ("basis of knowl-

edge" prong) and that such informant is credible or the information is reliable ("reliability" or "veracity" prong). *Illinois v. Gates* does not forsake these two factors; rather, the Court put them in perspective with a panorama of the totality of the circumstances. Now in determining probable cause, the "task . . . is simply to make a practical, common-sense decision whether, given all the circumstances . . ., *including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information,* there is a fair probability that contraband or evidence of a crime will be found in a particular place." 103 S.Ct. at 2332 (Emphasis added.) Thus, in making a warrantless arrest, an officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Jones v. United States,* (1960) 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 *overruled on other grounds* (1980) 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (*as cited in Illinois v. Gates,* 103 S.Ct. at 2334); *Draper v. United States,* (1959) 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. As the Court explained in *Illinois v. Gates,* such corroboration increases the probability of the "veracity" and "basis of knowledge" factors as they actually exist in or as they can be inferred from the informant's tip.[6] Thus, probable cause does not

---

**6.** In *Illinois v. Gates,* probable cause was established on the combination of a handwritten anonymous letter and police corroboration of information contained therein. The letter stated the Gateses sold drugs and outlined the logistics of a pending Illinois-Florida transaction. The letter included such details as the couple's address, type of abode, mode of transportation to and from Florida, and the location of the drugs in their car. The police verified the Gateses' address and certain of the details of the pending drug transaction. The police obtained a search warrant on the basis of the letter and their investigation, and the Supreme Court held there was probable cause to justify the issuance of the warrant. The Court reasoned the corroborative information confirmed much of the letter's details, thus increasing the probability the rest of the information was reliable ("veracity" prong) and the detailed nature of the letter created the inference that the tip-

ster had a familiarity with the operation ("basis of knowledge" prong). In our case here, with Haller, the facts more clearly establish the *Aguilar-Spinelli* factors than in *Illinois v. Gates.* We thus have little trouble adapting to this revised probable cause standard on the facts herein.

We observe that our *Mowrer* opinion cites to certain misinformation in the warrant, which we stated weakened the existence of the *Aguilar-Spinelli* factors. Such inconsistencies were the belief Mowrer was registered in a hotel near the airport rather than downtown and that he would be met by Roy Burger rather than Haller and Beck. We must reiterate that, in the case here, we were presented with additional evidence *outside* the warrant, not available in Mowrer's case, which supported the "veracity" and "basis of knowledge" requirements, and the misinformation therefore has less impact. Also, the tip in *Illinois v. Gates* con-

require analysis of two independent channels. Both prongs are still required, but "a deficiency in one may be compensated for, in determining the *overall reliability* of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Illinois v. Gates,* 103 S.Ct. at 2329. Hence, corroboration by independent police investigations can bolster the probability the two prongs exist and can establish a "substantial basis" for finding probable cause. Such happened in the Haller investigation.

In the case here, the first informant had given prior reliable information to the police concerning narcotics activity, related the course of Mowrer's transaction as an adjunct to his own expected shipment, and claimed he had talked to "Burger" the night before. The first informant's story was corroborated by the independent knowledge of the second source, whose reliability had also been demonstrated. Thus, the police were possessed of information, *buttressed* by their own investigation, that Mowrer would be engaging in a drug deal, probably on March 5 because he had extended his two-day stay through that date. The police had probable cause to make warrantless arrests pursuant to this knowledge.

Haller contends, however, that absent information regarding his specific participation, the police were without probable cause to arrest *him.* This argument is seductive but without merit. It is uncontroverted that both informants referred to a buyer named "Burger" but that neither reported any physical description of said buyer. We have not been supplied with any evidence, however, that Haller was not this "Burger," nor were the police aware, prior to his arrest, that his name was Haller. Haller is seeking to avoid his conviction on the basis of a mistaken identity. Even if his identity were crucial to the arrest, Haller could not prevail. *See Thurman v. State,* (1974) 162 Ind.App. 267, 319 N.E.2d 151 (intended ar-

restee did not perpetrate the crime observed but was found guilty on other charges based on evidence procured in a search subsequent to another's arrest). The police had probable cause to believe a felony would be, and was, taking place in Mowrer's room. Haller was arrested as one of the four participants, *not* necessarily because he may have been "Burger." Requiring police officers to know the exact identities of persons perpetrating crimes would vitiate many an arrest, even when the crime is directly observed.

*Hotel Room*

There is one other consideration we feel compelled to dispose of, and it concerns the fact the police effectuated Haller's arrest in a hotel room. If there were error for the court to not so suppress evidence, it has been waived by Haller's failure to argue this on appeal. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *see also Armstrong v. State,* (1982) Ind., 429 N.E.2d 647. But we find no error. *Payton v. New York, supra,* established the principle that police may not make warrantless arrests in the home absent exigent circumstances. *Accord, Harrison v. State,* (1981) Ind.App., 424 N.E.2d 1065; *cf. United States v. Johnson,* (1982) 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (*Payton v. New York* has retroactive application to the case here.) And a hotel room is clearly subject to the same Fourth Amendment protections as a home. *Hoffa v. United States,* (1966) 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374; *People v. Eichelberger,* 91 Ill.2d 359, 63 Ill.Dec. 402, 438 N.E.2d 140, *cert. denied* (1982) —— U.S. ——, 103 S.Ct. 383, 74 L.Ed.2d 514. The problem here is somewhat more complex because Haller was arrested in a third party's room, not his own. This issue was clearly avoided in *Payton v. New York.* It is apparent that one has a reasonable expectation of privacy in one's own hotel room. *Mowrer v. State, supra.* However, Haller

tained some inconsistencies, especially regarding the exact travel itinerary of Mrs. Gates who, instead of flying home from Florida alone, accompanied her husband in their drug-laden car. However, the Court's majority described the necessity that informants be infallible, ad-

hering to the notion that the totality of the circumstances establishes probable cause and that some small discrepancies will not render such determination nugatory if the information as a whole demonstrates such probable cause. This we believe to be the case here.

was a mere visitor who asserted neither a property nor a possessory interest in that room. *See Rakas v. Illinois*, (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *Murrell v. State*, (1981) Ind., 421 N.E.2d 638. He therefore has no standing to challenge the warrantless entry into Mowrer's room. *See United States v. Agapito*, (2nd Cir.1980) 620 F.2d 324, *cert. denied* (1980) 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40. Haller's arrest withstands our scrutiny.

The contested evidence was seized after the police had arrested Haller for conspiracy to deal in a controlled substance. Because we find the arrest was valid, the later warrantless search of Haller's person was also valid. *See United States v. Robinson*, (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Klopfenstein v. State*, (1982) Ind.App., 439 N.E.2d 1181. Thus, the trial court did not err in denying Haller's motion to suppress.

We affirm.

CONOVER, P.J., and YOUNG, J., concur.