Michael A. CAUDILL, Appellant
(Defendant Below),

v.

STATE of Indiana and the Indiana State Police, Appellee (Plaintiff Below).

No. 10A04–9204–CV–108.

Court of Appeals of Indiana,
Fourth District.

May 12, 1993.

Charles Gregory Read, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Michael A. Caudill's 1984 Ford Bronco and $355 were seized and forfeited after he was arrested for trafficking in cocaine. Caudill claims that: (1) there was insufficient evidence to support the trial court's forfeiture order; and (2) in the alternative, the evidence was the product of an illegal arrest and search and therefore could not be used in support of the trial court's forfeiture order.

We affirm.

### FACTS

The facts most favorable to the judgment indicate that on April 12, 1991, Detective Halbert of the Indiana State Police arranged for a confidential informant to buy cocaine from Caudill. The informant called Caudill's house from the police office, while the police monitored the conversation. When Caudill answered the phone, the informant addressed him as "Mike," and asked if he could provide an "eight-ball" of cocaine (approximately three and one-half grams). Caudill said he could. The informant and Caudill agreed to meet in an hour at Caudill's residence in Charlestown. The informant was then wired with a body transmitter and given between $350 and $400 in marked currency. The informant went to Caudill's house, followed by Halbert and Detective Myron L. Wilkerson, who parked on Caudill's street and monitored the transaction.

The detectives heard the informant get out of his car, knock on Caudill's door and talk with someone. The informant told the detectives over the transmitter that Caudill had left his house to go to a motor home where the informant believed Caudill kept his cocaine. The detectives heard someone enter the house and more conversation. The officers then saw the informant driving towards them, and followed him to the prearranged location, where he handed over to them cocaine he claimed to have purchased from Caudill. Based on this, Detective Wilkerson obtained a search warrant for both Caudill's home and the motor home.

Detective Halbert saw Caudill later that evening at approximately 9:30 p.m. Halbert had used the same informant in an unsuccessful attempt to purchase cocaine from a Joanna Long. After this attempt, the informant drove Long to the Horseshoe bar near Charlestown. Halbert, who had been following, saw that Caudill was sitting in his Bronco that was parked in the bar's lot. Halbert saw Long get out of the informant's vehicle and get into Caudill's Bronco, where she stayed for a brief time. When Long got out of Caudill's vehicle, Caudill drove out of the parking lot going north on S.R. 3 into Charlestown. Halbert followed Caudill, but had to turn back in order to continue monitoring the informant; however, Halbert notified other units of Caudill's location.

Detective Radford Guinn, who was also assisting in the surveillance of these transactions, picked up Halbert's message. He positioned himself at Jesse's Place, a bar just north of Caudill's location. Not long after, Caudill drove up and entered Jesse's. Guinn notified the other units of Caudill's location. Immediately after Caudill entered the bar, Detective Wilkerson, accompanied by Officer Harrod of the Jefferson City police, went in the bar after Caudill. Wilkerson followed Caudill into the restroom, told Caudill to get up against the wall, and patted him down for weapons. Wilkerson found none. Wilkerson then arrested Caudill and put him in Wilkerson's car. Caudill's Bronco was taken to the State Police Post in Sellersburg.

Wilkerson then drove Caudill to Caudill's home where a search was underway. Once inside, Wilkerson searched Caudill a second time, and found seven bags of cocaine weighing 4.4014 grams in the right front pocket of Caudill's jacket. Wilkerson also found $355 in cash, which did not match any of the currency given to the informant. No other drugs or money were found in Caudill's home, his motor home, or his Bronco.

On May 22, 1991, the State, along with the Indiana State Police, filed a complaint, asking the trial court to declare Caudill's 1984 Ford Bronco, along with the $355 cash found on his person, forfeited pursuant to Ind.Code 34–4–30.1–1 *et seq.* In the petition, the State alleged Caudill had been arrested for Dealing in Cocaine, and that at the time of his arrest he had been in possession of the Bronco which he used to transport the cocaine while committing the offense of Dealing and/or Possession of Cocaine. R. 2. On December 4, 1991, the trial court entered judgment for the State, awarded law enforcement costs, and ordered Caudill's Bronco and the $355 of U.S. currency forfeited. R. 181.

### DECISION

### I. THE FORFEITURE ORDER WAS SUPPORTED BY SUFFICIENT EVIDENCE.

Caudill challenges the sufficiency of the trial court's forfeiture order. Relying on federal case law interpreting the federal forfeiture statute, 21 U.S.C. § 881, Caudill

asserts that in order to bring a forfeiture action under I.C. 34–4–30.1–4, the State must prove a "substantial connection" between the seized property and the drug violations. Appellant's Brief at 14. While there are similarities between the two forfeiture provisions, we need not resort to federal law to interpret our own forfeiture statute.

### A. Indiana's Forfeiture Law: I.C. 34–4–30.1–1 et seq.

When originally enacted in 1981, I.C. 34–4–30.1–1 only allowed for the forfeiture of vehicles connected with illegal activity, and stolen or converted property.[1] Since then, this section has been expanded to reach a broad range of personal assets and real property that are traceable to or have facilitated illegal drug operations. For example, I.C. 34–4–30.1–1(a)(2) allows for the seizure of:

> [a]ll money, negotiable instruments, securities, weapons, communications devices, or any property commonly used as consideration for a violation of IC 35–48–4 (other than items subject to forfeiture under IC 16–6–8.5–5.1):
>
> (a) The following may be seized:
> (1) All vehicles (as defined by IC. 35–41–1), if they are used or are intended for use by the person or persons in possession of them to transport, or in any manner to facilitate the transportation of the following:
> (A) A controlled substance for the purpose of committing, attempting to commit, or conspiring to commit any of the following:
> (i) Dealing in cocaine or narcotic drug (IC 35–48–4–1).
> (ii) Dealing in a schedule I, II, or III controlled substance (IC 35–48–4–2).
> (iii) Dealing in a schedule IV controlled substance (IC 35–48–4–3).
> (iv) Dealing in a schedule V controlled substance (IC 35–48–4–4).
> (v) Dealing in a counterfeit substance (IC 35–48–4–5).
> (vi) Possession of cocaine or narcotic drug (IC 35–48–4–6).
> (vii) Dealing in paraphernalia (IC 35–48–4–8.5).
> (viii) Dealing in marijuana, hash oil, or hashish (IC 35–48–4–10).
> (B) Any stolen (IC 35–43–4–2) or converted property (IC 35–43–4–3) if the retail or repurchase value of that property is one hundred dollars ($100) or more.
> (C) Any hazardous waste in violation of IC 13–7–13–4.
> I.C. 34–4–30.1–1(a) (1992).

1. In its original version, I.C. 34–4–30.1–1 in its entirety read:

> (a) All vehicles, as defined by IC 35–41–1–2, are subject to forfeiture if they are used or are intended for use by the person or persons in possession of them to transport, or in any manner to facilitate the transportation of:
> (1) a controlled substance for the purpose of sale, receipt, delivery, or dealing in violation of IC 35–48–4–1, IC 35–48–4–2, IC 35–48–4–3, IC 35–48–4–4, IC 35–48–4–5, IC 35–48–4–8.2, of IC 35–48–4–10;
> (2) any stolen (IC 35–43–4–2) or converted property (IC 35–43–4–3) when the retail or repurchase value of that property is one hundred dollars ($100) or more; or
> (3) any hazardous waste in violation of IC 13–7–13–4.
> (b) A vehicle used by any person as a common carrier in the transaction of business as a common carrier is not subject to forfeiture under this section, unless it can be proven by a preponderance of the evidence that the owner of the vehicle knowingly permitted the vehicle to be used to transport a controlled substance, hazardous waste, or property which would subject it to forfeiture under subsection (a).

I.C. 34–4–30.1–1(a), (b) (1982). While other sections have been added, I.C. 34–4–30.1–1 remains relatively unchanged:

(A) furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute;

(B) used to facilitate any violation of a criminal statute; or

(C) traceable as proceeds of the violation of a criminal statute.

In addition, I.C. 34–4–30.1–1(c) creates a rebuttable presumption that any

[m]oney, negotiable instruments, securities, weapons, communications devices, or any property commonly used as consideration for a violation of I.C. 35–48–4 found near or on a person who is committing, attempting to commit, or conspiring to commit any of following offenses ... is property that has been used or was to have been used to facilitate the violation of a criminal statute or is the proceeds of the violation of a criminal statute....

With respect to real and personal property, I.C. 34–4–30.1–1(a)(3) allows the seizure of "[a]ny portion of real or personal property purchased with money that is traceable as a proceed of a violation of a criminal statute." Also, I.C. 34–4–30.1–1(a)(5) subjects to seizure:

Real property owned by a person who uses it to commit any of the following as Class A felony, a Class B felony, or a Class C felony:

(A) Dealing in cocaine or narcotic drug (IC 35–48–4–1).

(B) Dealing in a schedule I, II, or III controlled substance (IC 35–48–4–2).

(C) Dealing in a schedule IV controlled substance (IC 35–48–4–3).

(D) Dealing in marijuana, hash oil, or hashish (IC 35–48–4–10).

Once property is deemed forfeitable according to I.C. 34–4–30.1–1, Indiana's forfeiture law permits law enforcement officers to seize the property before commencing an action for reimbursement and forfeiture. However, this power can be exercised in only three situations: (1) the seizure is incident to a lawful arrest, search, or administrative inspection; (2) the property has been the subject of a prior judgment in favor of the state or unit in a proceeding under I.C. 34–4–30.1–1; or (3) the seizure is pursuant to a court's order based upon an *ex parte* determination that there is probable cause to believe that the property is subject to seizure under I.C. 34–4–30.1–1. I.C. 34–4–30.1–2(a)(1)–(3).

After property has been seized, the prosecuting attorney in the county where the seizure occurs may, within ninety (90) days after receiving written notice of demand from the owner or within one hundred eighty (180) days from the seizure, whichever comes first, file a complaint for reimbursement of law enforcement costs and forfeiture. I.C. 34–4–30.1–3(a). At the hearing on the State's complaint, it is the State's burden to show by a preponderance of the evidence that the property is seizable according to I.C. 34–4–30.1–1. I.C. 34–4–30.1–4(a). If the property in question is a vehicle, the State must also prove by a preponderance of the evidence that "a person who has an ownership interest of record in the bureau of motor vehicles knew or had reason to know that the vehicle was used in the commission of the offense." *Id.* Finally, we note that the statute does not provide any affirmative defenses; if a property owner fails to rebut the State's prima facie case, then the trial court shall order the property delivered to the law enforcement agency which seized the property. I.C. 34–4–30.1–4(c).

As one can see, an action for civil forfeiture is a relatively quick procedure and broad in scope. It can also be highly profitable for the State. After the trial court enters its judgment, and determines the amount of law enforcement costs, it must order the proceeds from the property's sale be deposited into the general fund of the State, with any excess being forfeited and transferred to the State Treasurer for deposit into the common school fund. I.C. 34–4–30.1–4(d). The trial court's order may also permit the law enforcement agency to use the forfeited property for a period not to exceed three (3) years before it must be delivered to the county sheriff for a public sale. I.C. 34–4–30.1–4(c). These features, combined with the requirement that the State prove its case by only a preponderance of the evidence, make it is easy to see why civil forfeiture actions are so attrac-

tive to law enforcement. *See*, Mary M. Cheh, *Constitutional Limits on Using Civil Remedies To Achieve Criminal Law Objectives: Understanding and Transcending the Criminal–Civil Law Distinction*, 42 Hastings L.J. 1325 (1991). The flip side is the harsh consequences for the defendant, who can have his property taken from him in a *quasi-criminal* setting without the usual panoply of constitutional rules of criminal procedure afforded to criminal defendants. Because of this, we must determine if forfeiture under I.C. 34–4–30.1–1 is truly a civil action or one that is better characterized as criminal.[2]

*B. I.C. 34–4–30.1–1: Civil or Criminal?*

■ Determining whether a statutory action is civil or criminal is a usually a matter of statutory construction, *see, United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 362, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 *see also, State ex. rel. McArthur v. Evans* (1862), 19 Ind. 92, 93 (examination of paternity statute to determine if legislature intended that an action for paternity action was a civil proceeding), and the objective of statutory construction is to determine and effect the intention of the legislature. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32, 38. After examining the forfeiture statute, we find that the General Assembly intended this as a civil action. Under I.C. 34–4–30.1–3(a), the State must file its forfeiture action in the court "in the jurisdiction where seizure occurred." By making jurisdiction dependent upon the location of the *res*, an action for forfeiture is in the nature of an action *in rem*, which has traditionally been viewed as a civil action. *See, One Assortment*, 465 U.S. at 363, 104 S.Ct. at 1105. Moreover, the fact that the forfeiture statute appears in Title 34 and not Title 35, indicates that the General Assembly considered this a civil, not a criminal,

action. It is also significant that Article 4 of Title 34, entitled "Special Proceedings" (in which the forfeiture statute appears), contains many actions which are unquestionably civil. *E.g.*, tort claims against governmental entities, I.C. 34–4–16.5; civil action for crime victims, I.C. 34–4–30; civil remedies for RICO activities, I.C. 34–4–30.5.

Finally, we think that the forfeiture of vehicles, money, personal assets, and other property serves remedial, non-punitive purposes. One is creating an economic disincentive to engage in proscribed behavior by subjecting to forfeiture those items "traceable" to criminal activity. By denying individuals the ability to profit from ill-gotten gain, an action for forfeiture resembles an equitable action for disgourgement or restitution. In addition, by allowing law enforcement officials to recoup the cost of drug operations from the proceeds of forfeited items, the statute helps to finance the State's legitimate interest in enforcing its anti-drug-trafficking laws. Given these remedial purposes, we do not think that the sometimes harsh effects of I.C. 34–4–30.1 override our conclusion that the General Assembly intended this as a civil action.[3]

Having determined that forfeiture actions are civil, and that Caudill's challenge is to the sufficiency of the evidence, we apply the same standard of review used when a challenge to the sufficiency of the evidence supporting a judgment in a civil case is raised:

> In reviewing the sufficiency of the evidence in a civil case, we will decide whether there is substantial evidence of probative value supporting the trial court's judgment. We neither weigh the evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the judgment along with all reasonable inferences to be

---

2. This court, in *Jennings v. State* (1990), Ind. App., 553 N.E.2d 191, assumed, without offering any reason, that an action under I.C. 34–4–30.1–1 is civil. However, with the growing trend of special proceedings tied to criminal activity, specifically the drug trade, we find it necessary to reach such a conclusion only after a more thorough examination.

3. This does not mean, however, that every forfeiture scheme created by our General Assembly will automatically be deemed civil. There may be forfeiture provisions that work such drastic results as to be characterized as punitive, and, therefore, be more properly designated as criminal. However, I.C. 34–4–30.1, in its present form, does not reach this level.

drawn therefrom. Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of the plaintiff's claim will we reverse a trial court.

*Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904.

Caudill maintains that the trial court's judgment is insufficiently supported because no evidence was presented which directly links Caudill's alleged drug offenses with his Bronco, or which showed that the $355 found on person was proceeds of a drug transaction. Appellant's Brief at 14. We disagree. As to the forfeiture of Caudill's Bronco, a second search of Caudill at his home produced over four grams of cocaine. The facts most favorable to the State show that Caudill did not have time to acquire the cocaine while he was in Jesse's place. Therefore, Caudill had the cocaine in his possession while he was driving his Bronco. The State alleged in its forfeiture complaint that Caudill was committing the offense of either dealing in cocaine and/or possession of cocaine as an A, B, or C felony. Taken together, these facts established a sufficient basis under I.C. 34-4-30.1-1(a)(1)(A)(vi) to justify the forfeiture of Caudill's Bronco.

With respect to the money, Caudill has misunderstood the scope of I.C. 34-4-30.1-1(c). Caudill simply argues that the $355 found on his person was not part of the same marked currency given to the confidential informant, thus proving the money was not used in the alleged drug transaction and therefore is not subject to forfeiture. However, as we stated earlier, this section provides that money found on or near a person who is committing, attempting to commit, or conspires to commit any of the specifically enumerated offenses, is presumed forfeitable—period. There is nothing in this section stating that discovered currency is only presumed to be proceeds of drug trafficking. On the contrary, I.C. 34-4-30.1-1(c) clearly states such money can also be presumed to be or have been used to violate a criminal statute—for example, to purchase drugs for personal consumption. While this may appear harsh, we observe that several other states have adopted virtually identical provisions stating that money found in close proximity to controlled substances is presumed forfeitable. *See, e.g.,* ARIZ.REV. STAT.ANN. § 13-4305(B) (1989); ARK. CODE ANN. § 5-64-505(a)(6) (Mitchie 1991); 725 ILL.REV.STAT. ch. 150, § 7 (1992); KY.REV.STAT.ANN. § 218A.410(j) (Baldwin 1991); MICH.Comp.Law § 333.-7521(1)(f) (Callaghan 1991).

For instance, in *Limon v. State* (1985), 285 Ark. 166, 685 S.W.2d 515, the Arkansas Supreme Court upheld forfeiture of defendant's money which was not linked to a particular drug sale. In *Limon*, officers, acting under a search warrant, entered defendant's home and discovered two bags containing money totalling $4770 in close proximity to cocaine and drug paraphernalia. Based on this, the court found that "all the money is presumed under the statute to be forfeitable." *Id.* at 517. There was nothing before the court linking the $4770 to a particular drug transaction. Rather, the mere possession of drugs in close proximity to the currency was sufficient to classify this money as forfeitable. As to whether the defendant had overcome this statutory presumption, the Court found unconvincing defendant's assertion that the $4770 was proceeds of a car sale some six months earlier. *Id.*

As in *Limon*, the State proved by a preponderance of the evidence that Caudill was either dealing in cocaine or *possessing cocaine as a class A, B, or C felony*, and that $355 was found on Caudill. At that point, the presumption of I.C. 34-4-30.1-1(c) kicked in, and it was up to Caudill to rebut the statutory presumption by showing that this money was untainted by criminality. This Caudill did not do. In fact, Caudill presented no evidence to rebut the presumption. R. 159. After the State rested its case, Counsel for Caudill simply asserted that "[t]he State ... had the burden in this case. I don't think they reached it." *Id.* Moreover, in its closing argument, the State again emphasized that cash was found on Caudill's person at the same time Caudill was committing either dealing

in cocaine or possession of cocaine as a class A, B, or C felony. R. 167–68. Again, Caudill did nothing. This was obviously insufficient to rebut the statutory presumption and, therefore, we find that this portion of the trial court's judgment was sufficiently supported by the evidence.

## II. THE FORFEITURE ORDER WAS SUPPORTED BY ADMISSIBLE EVIDENCE.

■ Caudill next argues that because the cocaine and cash were products of an illegal arrest and search, they cannot be used to support the trial court's forfeiture order. According to Caudill, without this illegally obtained evidence there could be no evidentiary basis for the trial court's order. We agree that the exclusionary rule, although a rule of criminal procedure, applies also to civil forfeiture proceedings. *See, One 1958 Plymouth Sedan v. Commonwealth of Pa.* (1965) 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170. But before we consider the need to exclude evidence, we must first see if this arrest and search violated the Fourth Amendment.

### A. Caudill's Arrest

■ Caudill claims that his warrantless arrest was illegal because it was unsupported by probable cause. In Indiana, a warrantless arrest is permissible, but only if at the time of arrest, the arresting officer has probable cause to believe that the defendant is committing or has committed a felony. *Jackson v. State* (1992), Ind., 597 N.E.2d 950, 956–57; *Haller v. State* (1983), Ind.App., 454 N.E.2d 76, 79. When conducting an *ex post facto* review of an arresting officer's probable cause determination, we look to see if the facts and circumstances within the officer's knowledge would permit a person of reasonable caution to believe that the arrestee has committed or is committing a felony. *Haller, supra.*

■ From the facts most favorable to the judgment, we find probable cause to justify Caudill's warrantless arrest. Detective Halbert personally observed the informant dialing what Halbert knew was Cau-

dill's telephone number. R. 35, 45. Halbert heard the informant refer to the person on the other end of the line as "Mike," R. 46, and a transcript of the call indicated that the person acknowledged being "Mike." *Id.* "Mike" said that he could get the informant an "eight-ball." *Id.* After this conversation, Detectives Halbert and Wilkerson followed the informant to the street where Caudill lived. R. 48–49, 114. Wilkerson personally saw the informant go up to the front door of Caudill's home. R. 115. During the course of the monitored transaction, the informant told the detectives that Caudill had stepped out to retrieve cocaine from the motor home. R. 52. Finally, when the informant met the detectives afterwards, he handed over cocaine which he claimed to have purchased from Caudill. R. 53. From this, Detective Wilkerson had probable cause to believe Caudill had committed a felony.

### B. The Second Search.

■ Caudill next argues that even if the cocaine was not the fruit of an illegal arrest, Detective Wilkerson's subsequent warrantless search of Caudill's person in his home could not qualify as a "search incident to arrest" because, according to Caudill, this search was not "contemporaneous" with his arrest. The State does not dispute that this search of Caudill's person was done in a different location than where he was arrested, or that it was outside the scope of the search of his premises. Instead, the State argues that this evidence is admissible under the "inevitable discovery" rule of *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. We need not resort to the doctrine of inevitable discovery (insofar as we do not find the evidence found on Caudill's person to be the tainted "fruit" of unlawful government conduct), determining instead that this search qualifies as a search incident to arrest.

Generally, a law enforcement officer must obtain a search warrant before conducting a search. 16 *William A. Kerr*, Indiana Practice § 2.2c (1991). However, this requirement is subject to a number of

carefully limited exceptions, one of which being a search conducted incident to a lawful arrest. Such warrantless searches of an arrestee's person and areas within his immediate control are permitted in order to protect the arresting officer and to prevent the destruction of evidence. *Andrews v. State* (1992), Ind.App., 588 N.E.2d 1298, 1303.

Contrary to Caudill's assertions, we do not require that a search incident to an arrest be made immediately following the arrest of the person involved. In *Chambers v. State* (1981), Ind., 422 N.E.2d 1198, our supreme court upheld a search of the defendant's wallet at a police station following his lawful arrest. In *Chambers*, the defendant was arrested and taken to the police station. Not until the defendant arrived at the police station did the police ask him to surrender the contents of his pockets. The defendant handed over his wallet, which the police searched, finding incriminating evidence. The defendant argued that this search could not be upheld as an incident to his arrest because of the gap between his arrest and the search of his wallet. Noting that " 'a search of an arrestee's person incident to a lawful arrest does not violate the fourth amendment even if a substantial period of time has elapsed between the arrest and the subsequent taking of property,' " *id.* at 1203 (citing *United States v. Phillips* (8th Cir. 1979), 607 F.2d 808, 810), the court concluded that "[t]he fact that the wallet was not searched until the defendant arrived at the police station does not alter the fact that the search was incident to the arrest." *Id.* 422 N.E.2d at 1203.

Likewise, we find this second search incidental to Caudill's arrest. As stated earlier, Caudill's arrest was lawful. *See, supra.* This being the case, it was of no consequence that Caudill was not searched until taken to his home. Therefore, we find that the evidence obtained from this search was admissible to support the State's complaint for forfeiture.

Affirmed.

CHEZEM, J., concurs.

BAKER, J., concurs and dissents with separate opinion.

BAKER, Judge, concurring and dissenting.

Although I agree with the majority's analysis of IND.CODE 34-4-30.1-1(c) and the rebuttable presumption it creates, I do not believe the $350 found on Caudill was seizable in this case because the State's own evidence rebutted the presumption the money was proceeds of a drug transaction.

The record reveals an informant paid Caudill between $350 and $400 in marked currency for an "eight-ball" of cocaine. When the detectives arrested Caudill several hours later, they found 4.4014 grams of cocaine in Caudill's front pocket, and $355 in cash. The State's own witnesses testified, however, that the $355 was not the same marked currency the informant gave Caudill earlier. Based on this testimony, we know the money was not proceeds from the earlier drug transaction; thus, the presumption of IND.CODE 34-4-30.1-1(c) was rebutted. I would reverse the seizure of the $350 in cash. In all other respects, I concur.