**James Dale DeLONG, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 17A03–9507–CR–248.

Court of Appeals of Indiana.

Aug. 21, 1996.

Hugh N. Taylor, Auburn, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana, Meredith J. Mann, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

GARRARD, Judge.

James Dale DeLong ("DeLong") was charged by information with Battery, a class A misdemeanor, Conspiracy to Deal in a Schedule II Controlled Substance, a class B felony, and Possession of a Schedule II Controlled Substance, a class D felony. After a hearing on July 12, 1995, the trial court denied DeLong's motion to suppress. DeLong appeals the trial court's denial of his motion to suppress.[1] We affirm.

---

1. Although unargued by the parties, there was a procedural hiatus, occasioned in part by this court, in perfecting this interlocutory appeal. *See Dingman v. State,* 602 N.E.2d 184 (Ind.Ct. App.1992) (holding Ind.Appellate Rule 4(B)(6)

applicable). Rather than pursue the matter further at this juncture, we elect to entertain jurisdiction of the appeal pursuant to App.R.4(E). *See INB Nat'l. Bank v. 1st Source Bank,* 567

## FACTS AND PROCEDURAL HISTORY

On December 13, 1994, shortly after midnight, Officer Shannon Planck ("Planck") of the Butler Police Department responded to a dispatch from DeKalb County regarding a 911 call from a female indicating that someone was going to kill her. When Planck arrived, DeLong was standing beside his truck, outside the home. Ronda Rowe ("Rowe"), DeLong's girlfriend, came out of the house and began yelling profanities at the police and telling them not to arrest DeLong. Rowe and DeLong both indicated that they had been fighting over the volume of the television. While DeLong was still outside by his truck, Planck spoke to Rowe inside the house and she indicated that she had been struck and pushed by DeLong. Planck observed bruising, redness, and a small amount of blood. Planck left the house and advised DeLong that he was being placed under arrest for battery. By the time Planck arrested DeLong, three additional police officers were at the scene. DeLong asked Planck for permission to leave his jacket at the house because it was a nice jacket. Planck allowed DeLong to remove the jacket and Planck placed the jacket on the trunk of the police car. Planck then searched, handcuffed, and placed DeLong in the backseat of his police car. Planck grabbed the jacket and started towards the house to leave the jacket with Rowe. Planck indicated he felt a hard, cylindrically shaped object in the jacket and believed there could have been a weapon. Planck testified that after he felt something in the jacket, he did not want to hand it back to Rowe in her state of mind without checking it for officer safety. Planck reached inside the pocket of the jacket and pulled out a plastic baggie which contained a white powdered substance. Planck returned to his police car with the jacket, removed DeLong, and read him his *Miranda* rights. Planck kept the jacket in his custody until he arrived at the jail and could search the entire jacket.

On January 17, 1995, DeLong was charged with Battery, Conspiracy to Deal in a Schedule II Controlled Substance, and Possession of a Schedule II Controlled Substance. After a hearing the trial court denied DeLong's motion to suppress, indicating that the search of the jacket constituted a search incident to lawful arrest and that it was conducted under exigent circumstances for protection of Planck and the other officers present. This appeal ensued.

DeLong argues that the search of his jacket was not incident to arrest or properly based on exigent circumstances. DeLong does not argue that his arrest for battery was unlawful. Therefore, we assume that there was probable cause and that the arrest was lawful.[2] Since we find that the search of DeLong's jacket was conducted incident to a lawful arrest, we need not review DeLong's claim that no exigent circumstance was present.

The Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution protect against unreasonable searches and seizures and, as a general rule, require "a judicially issued search warrant [as] a condition precedent to a lawful search." *Culpepper v. State,* 662 N.E.2d 670, 675 (Ind.Ct.App.1996) *reh'g denied, trans. denied. See also Rabadi v. State,* 541 N.E.2d 271 (Ind.1989); *Caudill v. State,* 613 N.E.2d 433 (Ind.Ct.App.1993). However, there are a number of carefully limited exceptions, one of which being a search conducted incident to a lawful arrest. *Caudill v. State,* 613 N.E.2d 433, 439 (Ind.Ct.App.1993), *Andrews v. State,* 588 N.E.2d 1298, 1303 (Ind.Ct.App.1992), *reh'g denied.* "Incident to lawful arrest, the arresting officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control." *Culpepper v. State,* 662 N.E.2d 670, 675 (Ind.Ct.App.1996) (citing

---

N.E.2d 1200 (Ind.Ct.App.1991) and cases cited therein.

2.  As a general rule, an officer may not arrest a person without a warrant for committing a misdemeanor offense unless the officer has observed the person in the commission of the offense. However, Ind.Code § 35–33–1–1(a)(5) allows a law enforcement officer to arrest a person when the officer has:

[P]robable cause to believe the person has committed a battery resulting in bodily injury under IC 35–42–2–1. The officer may use an affidavit executed by an individual alleged to have direct knowledge of the incident alleging the elements of the offense of battery to establish probable cause.

Ind.Code § 35–31–1–1(a)(5).

*Chimel v. California,* 395 U.S. 752, 772, 89 S.Ct. 2034, 2045, 23 L.Ed.2d 685 (1969), *reh'g denied* ). "Evidence resulting from a search incident to a lawful arrest is admissible at trial." *Hammond v. State,* 594 N.E.2d 509, 514 (Ind.Ct.App.1992), *trans. denied* (citing *Green v. State,* 461 N.E.2d 108 (Ind.1984)).

■ Since DeLong was lawfully arrested, he was subject to a warrantless search incident to a lawful arrest. DeLong argues that since he removed his jacket and Planck did not search the jacket until after DeLong was placed in the police car, the search of the jacket was no longer a search incident to a lawful arrest. DeLong's contention is incorrect. DeLong cites *Ceroni v. State,* 559 N.E.2d 372 (Ind.Ct.App.1990), *trans. denied,* as being analogous to this case, however, the facts in *Ceroni* are clearly distinguishable. In *Ceroni,* police searched a hotel room desk drawer and a satchel found within the desk drawer while the occupants of the hotel room were confined to the center of the room by three or four police officers. DeLong's reliance on *Johnson v. State,* 413 N.E.2d 335 (Ind.Ct.App.1980), is also misplaced as *Johnson* involved the search of an individual's handbag. We are likewise not persuaded by DeLong's reliance on additional authority involving searches which are not based on lawful arrest but instead on reasonable suspicion under. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). DeLong's search involves an article of clothing that DeLong was wearing at the time he was placed under arrest.

In *Akins v. State,* 429 N.E.2d 232, 238 (Ind.1981), our supreme court held that "[a]n arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment, and any following search of clothing needs no further justification." In *Chambers v. State,* 422 N.E.2d 1198 (Ind.1981), our supreme court upheld the search of the defendant's wallet at a police station following his arrest. In determining that the warrantless search of the defendant's wallet was lawful, the court cited a Seventh Circuit case which examined distinctions in recent United States Supreme Court cases:

"The Court appears to be distinguishing— for the purpose of whether a warrant is required to search property in police custody that was seized from a suspect at the time of arrest—between searches of an arrestee's clothing, as in *Edwards [United States v. Edwards,* (1974) 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771], or items that were in his pockets, as in *Robinson [United States v. Robinson,* (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427], from searches of other possessions, such as luggage, that were within his immediate control. Warrantless searches of the former items after they come in police custody can be characterized as searches of the arrestee's person because they do not involve any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself." *United States v. Berry,* (7th Cir.1977) 560 F.2d 861, 864 *vacated on other grounds,* 571 F.2d 2, *cert. denied,* 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978).

*Chambers v. State,* 422 N.E.2d 1198, 1203 (Ind.1981). The court held that the police not searching the wallet until the defendant arrived at the police station does not alter the fact that the search was incident to arrest. The court concluded that "[t]he search was incident to the arrest since the wallet, unlike a piece of luggage, was immediately associated with the person of appellant." *Id.* Similarly, in *Hammond v. State,* 594 N.E.2d 509 (Ind.Ct.App.1992), *trans. denied,* we upheld the search of a defendant's wallet as a search incident to a lawful arrest even though the search was not conducted until the defendant was at the police station. *Id.* at 514.

In *Herald v. State,* 511 N.E.2d 5 (Ind.Ct.App.1987), *reh'g denied, trans. denied,* we upheld the seizure of the defendant's boots shortly after he was placed in jail as a warrantless search incident to a custodial arrest. We noted that the United States Supreme Court had expressly approved the warrantless seizure of Edwards' clothing:

"This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon

than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention .... [i]t is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest."

*Herald,* 511 N.E.2d at 9 (quoting *United States v. Edwards,* 415 U.S. 800, 805–06, 94 S.Ct. 1234, 1238, 39 L.Ed.2d 771 (1974)).

In *Caudill v. State,* 613 N.E.2d 433 (Ind. Ct.App.1993), we upheld the search of a defendant's jacket as incidental to defendant's lawful arrest. In *Caudill,* the defendant was followed into the restroom of a bar, told to get up against the wall, and patted down for weapons. The defendant was then arrested and taken to his home where he was searched again. Police found cocaine in the defendant's jacket pocket. We held that "this second search [was] incidental to [defendant's] arrest" and concluded that "it was of no consequence that [defendant] was not searched until taken to his home." *Caudill,* 613 N.E.2d at 440.

■ In reviewing the trial court's ruling on the validity of a search, we consider the evidence favorable to the trial court's ruling, and any uncontradicted evidence to the contrary, to determine whether there is sufficient evidence to support the ruling. *Vance v. State,* 620 N.E.2d 687, 691 (Ind.1993). The facts favorable to the trial court's ruling indicate defendant was lawfully arrested for battery. DeLong was wearing his jacket when he was told by Planck that he was being placed under arrest. DeLong's removal of his coat and his attempt to leave it at the residence is of no consequence. The jacket was immediately associated with DeLong's person. The search of DeLong's jacket after he was placed in the police car is no more imposing upon DeLong and involves no greater reduction in his expectation of privacy. To hold otherwise would allow persons with evidence of criminal conduct on their person to have such evidence excluded simply by removing that article of clothing. Officer Planck's search of the jacket was incidental to DeLong's arrest. Therefore, the trial court's denial of DeLong's motion to suppress is affirmed.

Affirmed.

HOFFMAN and BAKER, JJ., concur.