## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 30 2017, 5:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Heather Ryon,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | August 30, 2017<br><br>Court of Appeals Case No.<br>49A02-1609-CR-2079<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Allan Reid, Commissioner<br><br>Trial Court Cause No.<br>49G10-1603-CM-10220 |

**Brown, Judge.**

[1] Heather Ryon appeals her conviction for possession of paraphernalia as a class C misdemeanor. She raises one issue which we revise and restate as whether the court abused its discretion in admitting evidence of a search. We affirm.

## Facts and Procedural History

[2] At 8:30 p.m. on March 15, 2016, Beech Grove Police Officer David Parker was conducting a routine patrol in his fully marked police car and full uniform when he conducted a traffic stop on a vehicle for no rear taillights. Officer Parker observed Ryon sitting in the rear passenger's seat and asked her if she would be willing to identify herself, and she did. Officer Parker performed a check, found that Ryon had an active warrant, and decided to take her into custody. A backup officer arrived at the scene, and Ryon and the driver exited the vehicle, leaving an elderly female in the front passenger seat who, based upon Officer Parker's observation "seemed like she would be fine just to stay in the vehicle." Transcript at 8. Officer Parker placed Ryon and the driver in handcuffs.

[3] Officer Parker approached the front passenger who claimed to be the owner of the vehicle and asked her if she cared if he briefly checked the vehicle for any contraband or weapons, and she said it was fine. Officer Parker saw the purse that had been on Ryon's lap sitting on the rear seat, took the purse, brought it back to Ryon, and asked, "this is yours correct?" *Id.* Ryon answered affirmatively. Officer Parker asked Ryon, "would you like this to go to jail with you," and Ryon said, "yes." *Id.* at 49. Officer Parker searched the purse and found a black small "velvet-like cinch bag" which contained a glass pipe Officer Parker believed to be used to smoke narcotics. When Ryon saw the pipe, she

"in kind of a startled or uh-oh type of look said, 'oh, I didn't even know that was in there, uh, that is just mine from some time ago. I don't even use anymore.'" *Id.* at 50. Later testing indicated methamphetamine residue in the pipe.

[4] On March 16, 2016, the State charged Ryon with possession of paraphernalia as a class C misdemeanor. On April 11, 2016, Ryon filed a motion to suppress her statements and any items discovered during the search. On June 13, 2016, the court held a hearing on the motion and the parties and the court questioned Officer Parker. Ryon's counsel argued that the evidence should be suppressed under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The court took the matter under advisement.

[5] On July 11, 2016, the court entered an order denying Ryon's motion to suppress, and on August 15, 2016, a bench trial was held. During cross examination of Officer Parker, Ryon's counsel asked him if Ryon told him that she wanted to take the purse with her to booking, to which he responded that Ryon did not explicitly state she wanted to take the purse and that "[a]t that time that I cuffed her she did not say 'Officer, please get my purse.'" *Id.* at 27. After the State rested, Ryon testified that her boyfriend was driving his grandmother, that they retrieved quite a few items from storage, that a purse was on top of a "bunch of coats and stuff that was sitting beside" her, and that the purse Officer Parker retrieved was not her purse and came from storage. *Id.* at 44. She also testified that Officer Parker retrieved the purse after she was

handcuffed and took it back to his car and that she did not tell him that it was her purse. On cross-examination, she testified that she did not give Officer Parker an identification card, she just verbally gave him her information, that she never claimed anything inside of the purse belonged to her, that she never wanted the purse to come with her to the jail, and that Officer Parker did not ask if she wanted the purse to go to the jail with her.

[6] On rebuttal, the prosecutor asked Officer Parker what Ryon said about the items inside of the purse, and defense counsel objected and argued that it was redundant and that Officer Parker already testified to this. The court overruled the objection, and Officer Parker answered: "Well, I had reached into the car and grabbed the purse out then I asked Ms. Ryon, 'is this your purse; would you like it to go to the jail with you' as courtesy more than anything because that is common for a female arrestee to want her purse to go with her." *Id.* at 49. Officer Parker also testified that he showed the purse to Ryon and that "I said, 'is this yours', she said 'yes', then I said, 'would you like this to go to jail with you' and she said, 'yes'." *Id.* He also stated that he placed the purse on the hood of his car where it was in bright light, searched it, and located the cinch bag.

[7] The court found Ryon guilty and sentenced her to sixty days with fifty-six days suspended and 365 days probation.

## *Discussion*

[8] The issue is whether the trial court abused its discretion in admitting evidence of the search. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[9] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id.* If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014).

[10] Ryon raises arguments under: (A) the Fourth Amendment of the United States Constitution; and (B) Article 1, Section 11 of the Indiana Constitution.

A. *Fourth Amendment*

[11]     Ryon argues that the search of her purse was unreasonable under the Fourth Amendment because it did not fall within one of the exceptions to the warrant requirement, and that the search was not consensual because the grandmother's consent to a search of her car did not authorize Officer Parker to search Ryon's purse on the backseat. She asserts that her agreement that her purse be transported to jail was not knowing and voluntary consent to Officer Parker's rummaging through it at the scene and that her authorization limited Officer Parker to being a courier for her purse. She also argues that the search was not reasonable as a search incident to arrest because she was away from the vehicle and secured in handcuffs, they were not in a high crime area, no one behaved suspiciously, and the purse presented no concerns for safety. She contends that there is no evidence the search was performed according to established departmental inventory procedures, and that applying the inevitable discovery exception would swallow the rule that inventory searches must be done according to established departmental policy and procedures.

[12]     The State asserts that Ryon lacks standing to litigate a challenge to a search of the purse because she testified to facts disavowing any expectation of privacy in the purse. It contends that it did not waive this argument because it never had an opportunity to raise this argument in the trial court because Ryon had not disavowed her ownership of the purse at the time of the suppression hearing or when she renewed her suppression objection at trial. Its positon is that Officer Parker lawfully searched Ryon's purse incident to her arrest, and that if a person is in actual possession of an item such as a purse at or immediately

preceding the time of her arrest, this container is part of her person for purposes of the search, just as her outer clothing is, and it therefore falls under *United States v. Robinson*, 414 U.S. 218 (1973), and may be searched based solely on the fact of the arrest, without needing any particularized concern for officer safety or evidence preservation. The State further asserts that the search would still be valid even if it was governed by *Arizona v. Gant*, 556 U.S. 332 (2009), because *Gant*'s officer-safety justification requiring the container in the vehicle to be within reach and accessible is still satisfied when there are other unsecured persons remaining in the vehicle who could reach the container and pose a threat to the officer. Finally, the State argues that the pipe in Ryon's purse inevitably would have been discovered when she was processed at the jail.

[13]     To the extent the State asserts that Ryon does not have standing to challenge the search, we note that while Ryon did not testify that the purse did not belong to her until after the State had rested, the State set forth rebuttal testimony from Officer Parker, and the prosecutor made arguments, but never asserted that Ryon lacked standing to contest the search. Accordingly, we will examine the propriety of Officer Parker's search of the purse. *See Tumblin v. State*, 736 N.E.2d 317, 320-321 (Ind. Ct. App. 2000) (holding that the State did not challenge the defendant's standing at the suppression hearing and trial and had waived the argument and noting that where the prosecution has failed to make any trial court challenge to standing, the government may not raise the issue for the first time on appeal and that, in resolving a claim of unlawful search and

seizure, an appellate court should not invoke a lack of standing *sua sponte*) (citing *Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992)), *trans. denied*.

[14] The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. If the search is conducted without a warrant, the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies. *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016).

[15] We begin with a review of cases from the United States Supreme Court. In *Riley v. California*, 134 S. Ct. 2473, 2482, (2014), the Court stated that "[a]s the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943 (2006)). The Court addressed whether the police may, without a warrant, search digital information on a cell phone seized from an individual who had been arrested, and reviewed three related precedents that set forth the rules governing searches incident to arrest. 134 S. Ct. at 2483-2484. Specifically, the Court stated:

> The first, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), laid the groundwork for most of the existing search incident to arrest doctrine. Police officers in that case arrested Chimel inside his home and proceeded to search his entire three-bedroom house, including the attic and garage. In

particular rooms, they also looked through the contents of drawers. *Id.*, at 753-754, 89 S. Ct. 2034.

The Court crafted the following rule for assessing the reasonableness of a search incident to arrest:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*, at 762-763, 89 S. Ct. 2034.

The extensive warrantless search of Chimel's home did not fit within this exception, because it was not needed to protect officer safety or to preserve evidence. *Id.*, at 763, 768, 89 S. Ct. 2034.

Four years later, in *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), the Court applied the *Chimel* analysis in the context of a search of the arrestee's person. A police officer had arrested Robinson for driving with a revoked license. The officer conducted a patdown search and felt an object that he could not identify in Robinson's coat pocket. He removed the object, which turned out to be a crumpled cigarette package, and opened it. Inside were 14 capsules of heroin. *Id.*, at 220, 223, 89 S. Ct. 2034.

The Court of Appeals concluded that the search was unreasonable because Robinson was unlikely to have evidence of the crime of arrest on his person, and because it believed that extracting the cigarette package and opening it could not be justified as part of a protective search for weapons. This Court reversed, rejecting the notion that "case-by-case adjudication" was required to determine "whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Id.*, at 235, 89 S. Ct. 2034. As the Court explained, "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Ibid.* Instead, a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Ibid.*

The Court thus concluded that the search of Robinson was reasonable even though there was no concern about the loss of evidence, and the arresting officer had no specific concern that Robinson might be armed. *Id.*, at 236, 89 S. Ct. 2034. In doing so, the Court did not draw a line between a search of Robinson's person and a further examination of the cigarette pack found during that search. It merely noted that, "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it." *Ibid.* A few years later, the Court clarified that this exception was limited to "personal property . . . immediately associated with the person of the arrestee." *United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 53 L.Ed.2d 538 (1977) (200-pound, locked footlocker could not be searched incident to arrest), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L.Ed.2d 619 (1991).

The search incident to arrest trilogy concludes with [*Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009)], which analyzed searches of an arrestee's vehicle. *Gant*, like *Robinson*, recognized that the *Chimel* concerns for officer safety and evidence preservation underlie the search incident to arrest exception. *See* 556 U.S., at 338, 129 S.Ct. 1710. As a result, the Court concluded that *Chimel* could authorize police to search a vehicle "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S., at 343, 129 S. Ct. 1710. *Gant* added, however, an independent exception for a warrantless search of a vehicle's passenger compartment "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Ibid.* (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring in judgment)). That exception stems not from *Chimel*, the Court explained, but from "circumstances unique to the vehicle context." 556 U.S., at 343, 129 S. Ct. 1710.

*Riley*, 134 S. Ct. at 2483-2484. The Court held that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 2488-2489.

[16] We next review *Garcia v. State*, 47 N.E.3d 1196 (Ind. 2016), a recent decision in which the Indiana Supreme Court discussed the search incident to arrest exception. The Court held that the opening of a pill container during the course of a pat-down search incident to arrest constituted a reasonable search. *Garcia*, 47 N.E.3d at 1197. The Indiana Supreme Court stated:

We continue to be persuaded by *Robinson* regarding the degree of suspicion necessary to conduct a search incident to arrest. The United States Supreme Court set out a clear standard in *Robinson*.

> "A custodial arrest of a suspect based on probable cause is a reasonable intrusion . . . that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U.S. at 235, 94 S. Ct. 467. We similarly conclude that it is "the lawful arrest which establishes the authority to search." *Id.*

*Id.* at 1200.

[17] The record reveals that Officer Parker obtained permission to search the interior of the vehicle by the owner, and Ryon made movements related to the purse prior to exiting the vehicle. Officer Parker testified that Ryon's movements "she made are like touching the purse or, just like my wife, her purse will be beside her and she will often pat it just to kind confirm that it is there or as you rest your hands its touching it. So, the movements that touched it." Transcript at 39. He also testified that the purse had been seated "just about her lap or touching her leg that she'd been getting into and fumbling when I was talking with her." *Id.* at 24. Ryon admitted the purse belonged to her and requested that it be transported to the jail with her. Under these circumstances, we conclude that the purse was immediately associated with Ryon, and the search was reasonable under the circumstances and did not violate Ryon's rights under the Fourth Amendment.[1]

---

[1] Ryon cites *Anderson v. State*, 64 N.E.3d 903 (Ind. Ct. App. 2016). In that case, we held that the search of the defendant's jacket which was left in a car by the defendant and sole occupant of the car was unconstitutional because the police unlawfully entered the passenger compartment of the defendant's car to access the jacket. 64 N.E.3d at 906. Unlike *Anderson*, the owner of the vehicle consented to a search of the vehicle, Ryon indicated that the purse belonged to her, and she requested that the purse be transported to jail with her. Thus, we find *Anderson* distinguishable.

Further, under the Fourth Amendment, "the inevitable discovery exception to the exclusionary rule permits the introduction of evidence that eventually would have been located had there been no error." *Shultz v. State*, 742 N.E.2d 961, 965 (Ind. Ct. App. 2001) (quotations and citations omitted), *reh'g denied*, *trans. denied*. Given Ryon's request for Officer Parker to transport her purse to the jail with her, we conclude that the officer inevitably would have discovered the glass pipe. Thus, under the Fourth Amendment, the pipe would have been admissible because it eventually would have been located even assuming that Officer Parker's search of the purse at the scene was improper. *See Nix v. Williams*, 467 U.S. 431, 444 (1984).

B. *Indiana Constitution*

Ryon argues that the search of the purse was unreasonable under Article 1, Section 11 of the Indiana Constitution. She contends that, even assuming her

---

The State notes that it found two Indiana cases in which searches of purses were found improper and cites *Bradford v. State*, 401 N.E.2d 77 (Ind. Ct. App. 1980), and *Johnson v. State*, 413 N.E.2d 335 (Ind. Ct. App. 1980), but argues that those cases are not instructive. In *Bradford*, the trooper that ultimately searched a purse arrived ten or fifteen minutes after Bradford left the vehicle to stand in front of it and there was no indication that the purse belonged to Bradford other than the fact the purse was removed from the automobile in which Bradford had been sitting. *See Bradford*, 401 N.E.2d at 78. Similarly, in *Johnson*, some ten or fifteen minutes after Johnson was placed under arrest, handcuffed, and placed in the police car, police searched a purse and discovered the handgun. *See Johnson*, 413 N.E.2d at 336. We also observe that both *Bradford* and *Johnson* relied upon *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586 (1979). *See Bradford*, 401 N.E.2d at 79; *Johnson*, 413 N.E.2d at 336. The Court in *Sanders* noted that it was not considering the constitutionality of searches of the luggage at issue incident to the arrest of its possessor. *Sanders*, 442 U.S. at 763 n.11, 99 S. Ct. at 2593 n.11, *abrogated by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982 (1991). Further, those cases did not involve an owner of the vehicle consenting to a search of the vehicle, the defendant indicating that the purse belonged to her, or the defendant's request that the purse be transported to jail with her. Thus, we find those cases distinguishable. *See Chambers v. State*, 422 N.E.2d 1198 (Ind. 1981) (distinguishing *Bradford* and *Johnson* and observing that those cases more nearly paralleled the case of *United States v. Chadwick*, 433 U.S. 1, 97 S. Ct. 2476 (1977), in which a footlocker was seized when the defendant was arrested and one and one-half hours after the arrest the police opened the footlocker without either a warrant or the permission of the defendant).

statement could be viewed as an intelligent relinquishment of her right to keep its contents private, the consent would still be invalid under *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975), because Article 1, Section 11 of the Indiana Constitution requires a person in custody to explicitly waive the right to consult with counsel before giving a valid consent to a search. The State asserts that the search did not violate Article 1, Section 11 of the Indiana Constitution and points to *Garcia v. State*, 47 N.E.3d 1196 (Ind. 2016).

[20] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[21] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). Generally, "[w]e consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the

extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).[2]

[22] Applying the factors articulated in *Litchfield*, we first consider "the degree of concern, suspicion, or knowledge that a violation has occurred." *Litchfield*, 824 N.E.2d at 361. In analyzing this factor, the Indiana Supreme Court has recently held that it had "previously recognized that 'once a lawful arrest has been made, authorities may conduct a "full search" of the arrestee for weapons or concealed evidence. No additional probable cause for the search is required, and the search incident to arrest may "involve a relatively extensive exploration of the person."'" *Garcia*, 47 N.E.3d at 1200 (quoting *Edwards v. State*, 759 N.E.2d 626, 629 (Ind. 2001) (citing *Robinson*, 414 U.S. at 227, 235, 94 S. Ct. 467) (internal quotation and citation omitted)). The record reveals and Ryon does not dispute that she had an arrest warrant.

[23] Regarding the degree of intrusion, we note that the elderly woman consented to a search of the vehicle. With respect to the purse, we note that the Indiana Supreme Court has stated that "society accepts as objectively reasonable that persons have a legitimate expectation of privacy in their purses and other closed

---

[2] We note that the inevitable discovery exception has not been adopted as a matter of Indiana constitutional law. *Ammons v. State*, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002), *trans. denied*. The Indiana Supreme Court has held that "our state constitution mandates that the evidence found as a result of [an unconstitutional] search be suppressed." *Brown v. State*, 653 N.E.2d 77, 80 (Ind. 1995). *See also Grier v. State*, 868 N.E.2d 443, 445 (Ind. 2007) ("Evidence obtained as a result of an unconstitutional search must be suppressed."). *See also Gyamfi v. State*, 15 N.E.3d 1131, 1138 (Ind. Ct. App. 2014) (declining to adopt the inevitable discovery rule as part of Indiana constitutional law in light of the Indiana Supreme Court's firm language in *Brown*), *reh'g denied*; *Ammons*, 770 N.E.2d at 935.

containers that normally hold highly personal items." *Krise v. State*, 746 N.E.2d 957, 970 (Ind. 2001). Here, Officer Parker testified that he asked Ryon if the purse belonged to her, that she responded affirmatively, that he asked her if she wanted the purse to go to jail with her, and that she said yes. Officer Parker testified that he "gathered her purse to send it to jail with her as her personally [sic] property." Transcript at 25. Given that she was already being placed under arrest and requested that the purse be transported to jail with her, the brief delay to search the purse would have had little to no additional impact on Ryon's ordinary activities and we cannot say that the degree of intrusion was high.

[24] With respect to the extent of law enforcement needs, Officer Parker testified that Ryon indicated that she wanted her purse to go to jail with her. In *Garcia*, the Indiana Supreme Court held:

> When the pill container was discovered on Garcia's person, it is insignificant that Officer Robinett acknowledged that the container could contain legal or illegal substances or that he did not subjectively view Garcia or the container as dangerous. First, we have continually reiterated that "[a] search incident to a valid arrest is lawful regardless of what it reveals." *Farrie* [*v. State*], [255 Ind. 681, 683, 266 N.E.2d 212, 214 (1971)]. Second, the objective reasonableness of the search is controlling, not Officer Robinett's subjective views. Even under a brief stop and frisk, it is well established that the reasonableness of an officer's suspicion turns upon whether "the totality of the circumstances presented a particularized and *objective* basis for the officer's belief . . . ." *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014) (internal citation and quotation omitted) (emphasis added). Under an objective standard, we agree that "unknown physical objects may

always pose risks, no matter how slight, during the tense atmosphere of a custodial arrest." *Riley v. California*, —— U.S. —
—, 134 S. Ct. 2473, 2485, 189 L.Ed.2d 430 (2014). In fact, these risks continue to some extent into the ensuing time thereafter the arrest. For example, a risk may still exist while police are transporting an arrestee to a secure location and during booking of that individual at the police station. *See Chambers v. State*, 422 N.E.2d 1198, 1203 (Ind. 1981) (upholding the validity of a search incident to arrest, regardless of the fact that the search did not occur at the exact time and place of the arrest, but occurred once the police arrived at the police station with the defendant.)

47 N.E.3d at 1203. The Court also stated: "we see no basis in the present circumstances why an independent warrant should be required to search an item already lawfully seized." *Id.* The Court further stated: "When taking an individual into custody, officer safety is a primary concern. Small and seemingly innocuous items have the potential to pose a threat. We see no reason to delay the officer's ability to inspect such items once they have already been lawfully seized." *Id.* This factor weighs in favor of the State.

[25] Under the totality of the circumstances, we conclude that the search of the purse was reasonable and did not violate Ryon's rights under Article 1, Section 11 of the Indiana Constitution.

## *Conclusion*

[26] For the foregoing reasons, we affirm Ryon's conviction for possession of paraphernalia as a class C misdemeanor.

[27] Affirmed.

May, J., and Pyle, J., concur.